**UNPUBLISHED ORDER**

Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 3, 2003
Decided April 22, 2005

**Before**

HON. JOEL M. FLAUM, *Chief Judge*

HON. RICHARD A. POSNER, *Circuit Judge*

HON. ANN CLAIRE WILLIAMS, *Circuit Judge*

Nos. 03-2234 & 03-2266

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>         *Plaintiff-Appellee,* <br><br>    v. <br><br> GREGORY A. KAMMERUD and <br> JUSTIN KAMMERUD, <br>         *Defendants-Appellants.* | Appeals from the United States District Court for the Western District of Wisconsin. <br><br> No. 02-CR-132-S <br><br> John C. Shabaz, <br> *Judge.* |

**O R D E R**

Gregory and Justin Kammerud appeal the sentences they received after pleading guilty to conspiring to manufacture, distribute, and possess with intent to distribute methamphetamine. Justin Kammerud first contends the district court should have granted him the benefit of the "safety valve" provision, *see* 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. We reject this argument. In addition, both defendants challenge the district court's determination of the drug quantities attributable to them. For the reasons that follow, we affirm Gregory Kammerud's sentence. In light of the Supreme Court's decision in *United States v. Booker,* 125 S. Ct. 738 (2005), and our opinion in *United States v. Paladino,* 401 F.3d 471 (7th Cir. 2005), however, we order a limited remand of only Justin Kammerud's sentence.

## I.  Background

Gregory Kammerud and his son, Justin Kammerud,[1] pled guilty to knowingly and intentionally conspiring to manufacture, distribute, and possess with intent to distribute methamphetamine.  At the sentencing hearing, the government called Clark Hawkinson as a witness.  Hawkinson testified that from at least 2000 through his arrest in September 2001, he was addicted to methamphetamine, using up to an "8 ball" (one-eighth of an ounce) a day.  He also admitted that he suffered from manic depressive bipolar disorder, had been institutionalized twice as a result, and received Social Security for his mental disability.  He also acknowledged that during 2000 and 2001, he was not taking the prescription medication that regulates his manic depressive disorder.  In addition, he admitted that he was angry with Gregory for taking his truck, selling it, and not giving him the money.

Hawkinson testified that sometime in 2000, he began trading anhydrous ammonia, a component used to manufacture methamphetamine, with Gregory.  In exchange, Gregory taught him how to manufacturing methamphetamine.  The following year, Hawkinson testified, he traded methamphetamine to Gregory and Justin for pseudoephedrine pills, another component used to manufacture methamphetamine.  Hawkinson said that in a typical transaction, he would deliver an "8 ball" (an eighth of an ounce) of methamphetamine in exchange for one thousand pills.  He testified that the trade of a thousand pills for an 8 ball of methamphetamine with Gregory occurred "approximately 10 times."  When asked how he knew it was approximately ten times, Hawkinson replied, "Because I was there."  Hawkinson also testified that he traded one thousand pills for an 8 ball on approximately two occasions with Justin.

Agent Tim Schultz also testified at the sentencing hearing.  He related details of his "safety valve" interviews with the defendants.  He also testified that based on his investigation of methamphetamine in the area, he did not believe either defendant provided all the information he knew about the offense for which he had been convicted.

Based in part on Hawkinson's testimony, the district court determined that Gregory's relevant conduct included 1,050 grams of methamphetamine precursor chemicals.  It then converted this quantity to 10,500 kilograms of marijuana equivalent, resulting in a base offense level of 36.  After a three-level reduction for acceptance of responsibility, the district court determined that the resulting guideline range was 135 to 168 months' imprisonment.  The district court sentenced Gregory

---

[1]To avoid confusion, this order will hereinafter refer to the defendants by their first names.

to168 months in prison, stating, "The Court believes that 168 months is not sufficient but that's the guideline."

With respect to Justin, the district court determined that his relevant conduct included slightly less than 1000 grams of methamphetamine precursor chemicals, which it converted to 9,050 grams of marijuana equivalent, resulting in a base offense level of 34. The district court also concluded that Justin did not qualify for a "safety valve" reduction because it found that he had not provided complete and truthful information. After a three-level reduction for acceptance of responsibility, the resulting guideline range was 108 to 135 months. The district court sentenced Justin to 125 months in prison. Both defendants appeal their sentences.[2]

## II. Analysis

A.      The district court did not err when it denied Justin Kammerud relief under the "safety valve."

Justin first contends the district court erred when it determined he did not satisfy the requirements for relief from mandatory minimum sentences under the "safety valve" provision. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. Our review of a district court's findings about the factual predicates for the safety valve reduction is for clear error only. *United States v. Alvarado*, 326 F.3d 857, 860 (7th Cir. 2003); *United States v. Williams*, 202 F.3d 959, 964 (7th Cir. 2000). We review a district court's interpretation of the safety valve provisions de novo. *Alvarado*, 326 F.3d at 860.

A sentencing court is to apply the safety valve provision if a defendant meets five criteria. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.[3] At issue is whether Justin satisfies the fifth requirement, that a defendant "must have truthfully provided the government with all information and evidence he had concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2. The defendant bears the burden of proving eligibility for the safety

---

[2]Gregory initially argued in his briefs that a search warrant was not supported by probable cause, but he later withdrew this argument.

[3]The first four requirements for the safety valve are: (1) the defendant must not have more than one criminal history point; (2) the defendant must not have used violence or credible threats of violence or possessed a firearm or other dangerous weapon in connection with the offense; (3) the offense must not have resulted in death or serious bodily injury to any person; and (4) the defendant must not have been an organizer, leader, manager, or supervisor of others in the offense. 18 U.S.C. § 3553(f); U.S.S.G § 5C1.2(a). It is undisputed that Justin satisfies these four requirements.

valve provision.  *United States v. Ponce*, 358 F.3d 466, 468 (7th Cir. 2004).  A defendant cannot meet this burden "if the government challenged the truthfulness, accuracy, or completeness of his statements and he produced nothing to persuade the district court that his disclosures were truthful and complete."  *United States v. Martinez*, 301 F.3d 860, 866 (7th Cir. 2002).

"A district court's decision to deny a defendant's § 5C1.2 motion is a heavily fact-bound one.  The district court, with its fact-finding and credibility-weighing skills, is well suited to make decisions concerning the defendant's full and honest disclosure." *United States v. Ramirez*, 94 F.3d 1095, 1102 (7th Cir. 1996).  The "plainly broad language" of the safety valve provision "demands 'all information' that the defendant has concerning the offense."  *United States v. Montes*, 381 F.3d 636 (7th Cir. 2004).

At the sentencing hearing, the district court heard the testimony of Agent Tim Schultz, a special agent for the Wisconsin Department of Justice.  Agent Schultz described his meeting with Justin as "a very difficult interview" where Justin provided "very little information" and during which "there was absolutely no volunteering of any information."  For example, Agent Schultz testified, when investigators "gave a name that we wanted to have information about he'd say, 'Go read the report.  It's all in the reports.'"  Agent Schultz was also asked whether, based on his knowledge of other investigations, he believed Justin was providing all the information he knew.  In response, Agent Schultz answered, "Absolutely not."  Other than providing one name of which investigators were not previously aware, Agent Schultz testified that Justin did not provide any information not already contained in police reports.  The district court credited Agent Schultz's testimony and determined that Justin withheld information and evidence concerning the offense of conviction, stating, "It was apparent to the Court that further information was available and not provided by the defendant."

Justin, however, points to Agent Schultz's testimony that Justin did not provide information about the robbery of a methamphetamine dealer during his safety valve interview.  Agent Schultz had testified that on a prior occasion, Justin had told investigators he possessed information about that robbery.  Justin contends that the district court erred in denying him the safety valve because details about this robbery fall outside the provision's requirement to provide all information about "the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  *See* U.S.S.G. § 5C1.2.

We find this argument unpersuasive.  First, the district court did not mention Justin's lack of candor about the robbery when it denied him the benefit of the safety valve.  In addition, that Justin told officials a different story about his knowledge of robbery details during the safety valve interview could have raised questions about

Justin's honesty with Agent Schultz in other parts of the interview.[4]  Finally, it would be difficult for us to deem clearly erroneous any conclusion that the robbery of a methamphetamine dealer, while Justin was involved in a conspiracy to manufacture and distribute methamphetamine, was part of the same course of conduct or common scheme or plan as the conspiracy to distribute methamphetamine.  The district court had heard testimony from Agent Schultz, for example, who testified that he believed the robbery of the methamphetamine dealer was related to the same course of conduct or common scheme or plan as that with which Justin was charged.  In sum, we do not find clearly erroneous the district court's determination that Justin failed to carry the burden of proving he was entitled to the benefit of the safety valve.

     B.     *Only Justin Kammerud's sentence requires remand under* Paladino.

Both Gregory and Justin also contend that the district court erred in determining the quantity of drugs attributable to them.  To both the district court and to us, Gregory argued that the district court erred in finding that his relevant conduct involved 1,050 grams of methamphetamine precursor chemicals.  He maintains the district court should have more significantly discounted the testimony provided by Clark Hawkinson at the sentencing hearing.  Justin raises his challenge to the quantity of drugs attributable to him for the first time on appeal.

The district court found Hawkinson "credible" and credited Hawkinson's testimony that on ten occasions, he exchanged 1000 pseudoephedrine pills for methamphetamine with Gregory.  This testimony, along with other quantity determinations that Gregory does not challenge, formed the basis of the district court determination's that Gregory's base offense level was 36.

We agree with Gregory that Hawkinson was far from an ideal witness. Hawkinson admitted that during the relevant time period, he was a methamphetamine addict and suffered from a manic depressive bipolar disorder for which he was not taking medication.  He also admitted to being unhappy with Gregory for taking his truck and not paying him for it.  In addition, even the government took the position before the district court that Hawkinson's testimony should be discounted to the extent that Gregory should have been held responsible for the equivalent of less than 10,000

---

[4]Schultz testified that when he asked Justin during the April 22 interview about his involvement in a robbery of a methamphetamine dealer, Justin professed that he knew nothing about it.  However, Schultz told the court that during a previous meeting, Justin had stated to Schultz that he had information about the robbery and beating and that he could help the government with it.  Through independent investigation, Schultz said he also possessed information that Justin had information about the robbery.

grams of marijuana. This finidng would have placed Gregory's base offense level under the Guidelines at level 34, not level 36.

Before the Supreme Court's decision in *Booker*, however, we could not have disturbed either defendant's sentence. Under the mandatory Guidelines regime, sentencing judges determined the quantity of drugs attributable to a defendant by a preponderance of the evidence. *United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004). Under this preponderance of the evidence standard, we were reluctant to find error in a sentencing judge's credibility determination in "all but the most extraordinary circumstances." *United States v. Souffront*, 338 F.3d 803, 832 (7th Cir. 2003) (citations omitted). Although we required district courts to "carefully scrutinize the statements of drug addicts . . . before using them against a defendant for sentencing purposes," *United States v. Taylor*, 72 F.3d 533, 544 (7th Cir. 1995), we cannot say that the district court failed to conduct the requisite inquiry here. Hawkinson testified before the sentencing judge, gave testimony consistent with the statements he had previously made to the probation office, and admitted many things against his interest. The district court specifically found Hawkinson "forthright" and "credible," and we do not find this conclusion clearly erroneous. *See also United States v. Blalock*, 321 F.3d 686, 690 (7th Cir. 2003) (finding no clear error in drug quantity determination based on testimony of "crack-addict informants"); *United States v. Berthiaume*, 233 F.3d 1000, 1003 (7th Cir. 2000) ("the trial court is entitled to credit testimony that is 'totally uncorroborated and comes from an admitted liar, convicted felon, [or a] large scale drug-dealing, paid government informant.'") (citation omitted).

Now, however, the Supreme Court has made clear that "[a]ny fact (other than a prior conviction)," including drug quantity, "which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S.Ct. at 756. In light of *Booker*, both defendants now contend that their sentences are unconstitutional.

Because the defendants raise this challenge for the first time on appeal, our review is for plain error. *United States v. Paladino*, 401 F.3d 471, 481 (7th Cir. 2005). Under the plain error test, "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights." *United States v. Cotton*, 535 U.S. 625, 631 (2002) (internal quotations and citation omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citations omitted).

Here, the increase in the defendants' sentences under the then-mandatory scheme based on a quantity of drugs determined only by the sentencing judge

constitutes error that is plain. *See Paladino*, 401 F.3d at 481. We have also stated that if a defendant has been prejudiced by an illegal sentence, then allowing that illegal sentence to stand would constitute a miscarriage of justice. *Id.* at 483 ("It is a miscarriage of justice to give a person an illegal sentence that increases his punishment, just as it is to convict an innocent person.").

We turn, then, to the third prong of the plain error analysis. As we discussed in *Paladino*, in many instances we do not know whether the sentencing judge might have imposed a sentence more favorable to the defendant had he known the guidelines were discretionary. There are circumstances, however, that "may intimate that a district court's mistaken belief about the extent of its discretion to reduce the penalty did not work to a defendant's disadvantage." *United States v. Lee* 399 F.3d 864, 866 (7th Cir. 2005). One such circumstance occurs "when the district court states on the record that, if it had more leeway, it would have imposed a higher sentence." *Id.*

Here, the district court sentenced Gregory Kammerud to 168 months' imprisonment, the highest end of the applicable sentencing range under the then-mandatory guidelines. Deeming his conduct "reprehensible," the district court stated, "The Court believes that 168 months is not sufficient but that's the guideline." (Sent. Tr. 100.) This statement satisfies us that we can be "certain that the judge would have not have given a different sentence even if he had realized that the guidelines were merely advisory." *Paladino,* 401 F.3d at 483. Therefore, we affirm Gregory's sentence.

With respect to Justin, however, we cannot be sure that the district court judge would have imposed the same sentence if he had known the Guidelines were merely advisory. The district court determined the sentencing range under the Guidelines applicable to Justin was 108 to 135 months, and it sentenced Justin to 125 months in prison. Unlike his father, who was sentenced at the highest end of the Guidelines' range by a district court judge who stated he wanted to impose an even higher sentence, Justin received a sentence in the middle of a sentencing range. Accordingly, we "while retaining jurisdiction of the appeal, order a limited remand to permit the sentencing judge to determine whether he would (if required to resentence) reimpose his original sentence." *Paladino*, 401 F.3d at 484. The sentencing judge should proceed on remand in accordance with the procedure we set forth in *Paladino*.

### III.  Conclusion

For the foregoing reasons, we affirm Gregory Kammerud's sentence. In addition, we order a limited remand of Justin Kammerud's sentence consistent with this order and our opinion in *United States v. Paladino.*