In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-3849

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEVIN M. JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 05 CR 30011—**Jeanne E. Scott**, *Judge.*

ARGUED MAY 23, 2007—DECIDED AUGUST 15, 2007

Before EASTERBROOK, *Chief Judge*, and BAUER and MANION, *Circuit Judges.*

BAUER, *Circuit Judge.* Kevin Johnson pleaded guilty to conspiring with others to manufacture and to distribute 50 or more grams of methamphetamine or more than 500 grams of a substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court sentenced Johnson to 220 months' imprisonment. Johnson appeals his sentence, arguing that the district court erred in finding that his confrontation of a confidential informant prior to his sentencing hearing reflected his intent to obstruct justice and disqualified him from being eligible for the sentencing guideline's "safety valve" provision. We affirm.

**I. Background**

From September 30, 2003 through January 14, 2004, Johnson and at least seven of his drug associates manufactured and distributed approximately 2,500 grams of a substance containing methamphetamine in Taylorville, Illinois. Johnson was arrested in possession of marijuana and 7.5 grams of methamphetamine on January 15, 2004. In March of 2004, a number of Johnson's drug associates, including Julia Raymond, began cooperating with law enforcement agents, implicating themselves and Johnson in the conspiracy. On March 23, 2004, Raymond told investigating agents that Johnson had cooked methamphetamine during late 2001 and that, over a four-month period, Johnson had sold two to three grams of methamphetamine to two different men four times a week.

On March 22, 2006, Johnson pleaded guilty to both counts of the indictment and was free on bond pending sentencing. The probation officer completed and issued Johnson's presentence investigation report (PSR) on May 26, 2006. The PSR included the information provided by Raymond, who was referred to as a confidential source in the PSR. Shortly after it was issued, Johnson read the PSR and determined that one of the confidential sources listed therein was Raymond. At the time, Johnson and Raymond were both working for the same employer. Johnson worked as a machine operator in one building, and Raymond worked as an assembler in another building located on the same site.

On June 1, 2006, Johnson left his work area and approached Raymond at her work station. According to Johnson, he approached Raymond because he wanted to ask her why she had lied to law enforcement agents about him. Raymond denied talking to any investigators about him. Johnson then said, "Don't lie to me, Julia . . . . I have accepted responsibility for my actions but now you

are going to have to live with what you [did]." Both parties admit that the conversation became heated after Raymond told Johnson that her cousin, a retired police officer, had told her to let him know if Johnson ever bothered her. Johnson told Raymond that he was going to do his time in jail just as she should have to do her time and that she was no better than anyone else. Raymond responded that she was going to call her cousin and have him straighten Johnson out. Johnson then directed profanities at Raymond and walked away.

Following the incident, Raymond told her work supervisor that Johnson had approached her and kicked a crate near where she was working to get her attention. She claimed that Johnson confronted her claiming that her cousin had busted him for cooking methamphetamine.[1] She also said that Johnson had directed profanities at both her and her cousin. Later that day, Raymond contacted her cousin, who told her to contact Jeff Brown, a lieutenant with the Christian County Sheriff's Office.

On June 6, 2006, Raymond contacted Officer Brown and told him that Johnson had confronted her about statements that she had made to law enforcement and had accused her of lying to the investigators. She also claimed that during the encounter Johnson told her that he had "a gun and three bullets and if one bullet doesn't do the job, one of the other two will".

After learning about Johnson's conduct, the probation officer determined that Johnson had violated the terms of his pretrial release by threatening or intimidating Ray-

---

[1] Raymond later testified that she falsely reported some of the facts surrounding the incident to her employer because she did not want her employer to know that she had previously used drugs and had been involved with a group of people including Johnson.

mond and therefore revised Johnson's PSR. The PSR found that Johnson should be held accountable for 2.66 kilograms of a substance containing methamphetamine, which subjected him to a base offense level of 34. It also determined that Johnson's conduct during the conspiracy had created a substantial risk of harm to human life and the environment, which resulted in a three-level enhancement under U.S.S.G. § 2D1.1(b)(6)(B). And, stating that Johnson had threatened or intimidated Raymond, the PSR recommended applying a two-level enhancement pursuant to U.S.S.G. § 3C1.1, for attempted obstruction of justice and denying a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Finally, the PSR found that Johnson's intimidation of Raymond constituted a credible threat of violence, and therefore, Johnson did not qualify for the safety valve provision of U.S.S.G. § 5C1.2. Accordingly, the PSR calculated that the resulting guidelines sentencing range for Johnson, who had a category one criminal history and an offense level of 39, was 262 to 327 months.

Johnson objected to the PSR, challenging its findings that he qualified for the obstruction of justice sentencing enhancement and that he did not qualify for the safety valve and acceptance of responsibility reductions. He argued that his behavior towards Raymond on June 1 was neither threatening nor intimidating and that he did not attempt to obstruct or impede justice by approaching Raymond.

At Johnson's sentencing hearing, the Judge listened to the testimony of Johnson, Raymond, their work supervisors, and human resource officers who had information concerning the June 1 encounter, as well as Officer Brown. After listening to the witnesses, the Judge decided not to credit Raymond's claim that Johnson had told her that he had a "gun and three bullets", explaining that she did not feel the evidence was strong enough to base

a finding on those purported statements. However, she did find that Johnson had threatened and attempted to intimidate Raymond when he kicked a crate to get her attention, asked her why she had lied, told her "now you are going to have to live with what you have done," and directed profanities at her. The Judge also found that this act was done to impede the administration of justice.

The district court agreed with the recommendations of the PSR and found Johnson's sentencing guidelines range to be 262 to 327 months. In determining Johnson's sentence, the district court first considered the relevant 18 U.S.C. § 3553(a) factors. The district court noted that a sentence within the advisory guidelines range would result in an unwarranted disparity when compared to the sentences received by defendants in related cases and others involved in the conspiracy. The Judge concluded that a sentence of 230 months would be appropriate to avoid the disparity. Because Johnson had already served a ten-month sentence in a related state court case, the court reduced his sentence by ten months and sentenced Johnson to 220 months' imprisonment. This timely appeal followed.

## II. Discussion

### A. Obstruction of Justice Enhancement

Johnson first challenges the district court's decision to enhance his sentence for obstructing justice. We review *de novo* whether the district court made the appropriate findings to support an obstruction of justice enhancement and review the factual findings underlying this determination for clear error. *United States v. Sheikh*, 367 F.3d 683, 686 (7th Cir. 2004).

Under § 3C1.1 of the sentencing guidelines, a defendant's offense level should be enhanced by two levels

if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." A threat to a potential witness is sufficient to warrant an obstruction of justice enhancement, where the statement was intended to threaten, intimidate, or otherwise unlawfully influence that person. *United States v. Johnson*, 46 F.3d 636, 638 (7th Cir. 1995) (citations omitted); U.S.S.G. § 3C1.1, comment (n. 4).

Johnson contends that his encounter with Raymond was insufficient to establish that he had attempted to obstruct justice. He claims that he neither threatened nor intended to threaten Raymond on June 1. The determination of what Johnson intended is a question of fact. *See United States v. Saunders*, 166 F.3d 907, 912 (7th Cir. 1999) (noting that whether a defendant's statement constituted a threat is an issue of fact). The district court found that Johnson had attempted to intimidate Raymond, stating:

> [t]he context of the way he approached her, the fact that he approached her at all . . . conveyed to her that he knew she was a [confidential] source, conveyed to her that he thought she was a liar, and ended with a comment you're going to have to live with what you've done would, I think, be conceived as a threat or intimidation by anyone looking at this objectively. . . . I think his statements are . . . an effort to intimidate a potential witness that he knew was a potential witness for sentencing because of the release of the Pre-Sentence Report.

We agree. The timing, setting, and context of Johnson's confrontation of Raymond supports the finding that he was attempting to threaten or intimidate her. This finding was not clearly erroneous, and the district court did

not err by enhancing Johnson's sentence two levels pursuant to the obstruction of justice enhancement.

## B.  Safety Valve Provision

Johnson also challenges the district court's determination that he did not qualify for the safety valve provision. The safety valve allows the district court to depart below the statutory mandatory minimum sentence for certain drug offenses. *See* U.S.S.G. § 5C1.2; 18 U.S.C. § 3553(f). Johnson contends that he qualified for an offense-level reduction pursuant to U.S.S.G. § 2D1.1(b)(9), which provides for a two-level reduction if the defendant satisfies the five criteria set forth in § 5C1.2(a). The district Judge refused to apply the safety valve reduction because she found that Johnson had failed to satisfy § 5C1.2(a)(2). The second criteria under § 5C1.2(a) provides that the safety valve provision only applies if the "defendant did not use violence or credible threats of violence . . . in connection with the offense."

We review the district court's findings about the factual predicates for the safety valve reduction for clear error. *See United States v. Harrison*, 431 F.3d 1007 (7th Cir. 2005) (*citing United States v. Williams*, 202 F.3d 959, 964 (7th Cir. 2000)). Because we find no error in the district court's determination that Johnson's confrontation of Raymond on June 1 constituted a credible threat of violence, we conclude that the she did not err in ruling that Johnson was ineligible to receive a two-level reduction pursuant to the safety valve provision.

## III.  Conclusion

For the foregoing reasons, the sentence imposed is AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*