In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2424

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FERNANDO ACEVEDO-FITZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 00416 — **Matthew F. Kennelly**, *Judge.*

ARGUED DECEMBER 17, 2013 — DECIDED JANUARY 7, 2014

Before FLAUM, SYKES, and TINDER, *Circuit Judges.*

FLAUM, *Circuit Judge*. Fernando Acevedo-Fitz pleaded guilty to conspiracy to possess heroin with intent to distribute, 21 U.S.C. § 841(a)(1). The drug quantity was at least a kilogram, and the district court sentenced Acevedo-Fitz to the corresponding statutory minimum of 120 months' imprisonment after concluding that he was ineligible for the "safety valve." *See id*. § 841(b)(1)(A)(i); 18 U.S.C. § 3553(f). Acevedo-Fitz had been caught lying during several safety-

valve debriefings, and on appeal he essentially contends that, despite his lies, he came clean before sentencing and thus was entitled to benefit from the safety valve. We conclude, however, that Acevedo-Fitz forfeited any entitlement to the safety valve by attempting to secure that benefit through deception. Moreover, the district court did not believe that Acevedo-Fitz ever told the entire truth, and that finding is both amply supported by the record and reason enough to affirm the defendant's sentence.

## I. Background

After an investigation conducted by the Drug Enforcement Administration and the Chicago Police Department, the government filed a criminal complaint in June 2011 charging Acevedo-Fitz, Luis Gambino, and others with drug crimes including seven heroin sales totaling 4.75 kilograms during August through December 2010. The investigation also revealed a March 2011 transaction involving what was then believed to be an undetermined quantity of cocaine, but later was determined to be heroin. Acevedo-Fitz and Gambino came to the DEA's attention as a result of the investigation of their principal customers, Domingo Blount and Gabriel Bridges.

In September of 2011 Acevedo-Fitz was indicted for conspiracy, 21 U.S.C. §§ 846, 841(a)(1), three substantive counts of distributing heroin, *id*. § 841(a)(1), and three counts of using a communication facility in committing a felony drug crime, *id*. § 843(b). Acevedo-Fitz pleaded guilty to the conspiracy, and the government dropped the remaining charges. In a written, signed Petition to Enter a Plea of Guilty, Acevedo-Fitz admitted that on "several occasions" from August 2010 through

February 2011 he and Gambino had distributed varying quantities of heroin, principally to Domingo Blount and Gabriel Bridges. Then during the plea colloquy the defendant admitted—under oath—these same facts.

Three months before sentencing the government submitted a memorandum arguing that Acevedo-Fitz was ineligible for the safety valve. The government contended that Acevedo-Fitz had failed to comply with the requirement that he provide "all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct." The government explained that Acevedo-Fitz had twice participated in safety-valve debriefings during January 2013 but lied on both occasions. Only when the defendant was confronted with evidence of his lies, the government continued, did he admit what investigators already knew. The government asserted that Acevedo-Fitz could not satisfy his burden of establishing eligibility for the safety valve because his disclosures had been untrue and incomplete.

In support of this memorandum, the government attached the Investigation Report detailing what had occurred during the two safety-valve debriefings. During the first session Acevedo-Fitz denied trafficking drugs before June 2011, and he also denied dealing directly with customers. Only after a prosecutor confronted him with recorded conversations about a September 2010 transaction did Acevedo-Fitz admit that those conversations concerned an order for 1 kilogram of heroin. The government then ended the session to give Acevedo-Fitz a chance to review with counsel all of his conversations recorded during a wiretap.

During the second debriefing, Acevedo-Fitz stated that he supplied 1 kilogram of heroin to Gambino on a single occasion but did not engage in any other drug transactions. Those assertions cannot be reconciled with the defendant's admissions before and during the guilty-plea colloquy, and when an agent challenged his truthfulness, Acevedo-Fitz said that he needed to listen to the intercepted calls. When the agent confronted him with the details from his multiple heroin transactions, Acevedo-Fitz replied, "That's a lie." He denied recollection of five of the transactions but said he "might recall the details" if the agents would play the intercepted telephone conversations. During the latter part of the debriefing, Acevedo-Fitz went so far as to deny even recognizing the name "Bridges," despite his earlier written and oral admissions that Bridges was one of his two principal customers. Before the debriefing ended, Acevedo-Fitz told agents about the distribution process, rent payments, and a description of the heroin he obtained from his suppliers.

Acevedo-Fitz objected to the presentence report and to the government's memorandum. He argued that the safety valve should be applied despite his lies during the two debriefings because months later, in May 2013, he sent the government a letter that, on his view, constituted a complete and truthful disclosure prior to sentencing. In that letter (which counsel wrote but Acevedo-Fitz signed) the defendant identified his primary customers and his heroin supplier, admitted his participation in the eight transactions listed in the complaint, and described the locations where the transactions were negotiated and conducted.

At sentencing the government argued that, even considering the May 2013 letter in isolation, that document did not warrant a safety-valve reduction because it lacks details about relevant conduct. The government added that it no longer could distinguish the defendant's truthful admissions from his lies. Moreover, the government reiterated, Acevedo-Fitz had been untruthful and uncooperative during the two debriefings, so much so that he had denied *documented* offense conduct.

Acevedo-Fitz countered that his statements during the debriefings were not *entirely* false and should count for something because he provided the government with a few truthful admissions. And in his May 2013 letter, the defendant continued, he had confessed specific transactions committed with Gambino, as well as the identity of clients and the basics of the conspiracy; any missing details, he insisted, were unimportant. Acevedo-Fitz implored the district court to apply the safety valve because to do so would lower his guidelines imprisonment range below the 10-year statutory minimum. (A defendant who meets the statutory criteria for the safety valve also receives a 2-level reduction under U.S.S.G. § 2D1.1(b)(16). *See* 18 U.S.C. § 3553(f); U.S.S.G. §§ 5C1.2, 2D1.1(b)(16). Without the 2-level decrease, Acevedo-Fitz faced a total offense level of 31 and an imprisonment range of 108 to 135 months; with the decrease the range would have been 87 to 108 months).

The district court first concluded that Acevedo-Fitz's debriefings "absolutely would not come anywhere close to being in the ball park of qualifying" him for the safety valve, particularly since he had denied events which were demonstrably true. And the May 2013 letter, the court continued, was technically timely because it was tendered before the sentenc-

ing hearing yet still was "too little too late, with emphasis on the too little." The court noted that, although it was the defendant's burden to show himself eligible for the safety valve, he had not given the government all of the information he possessed and instead had identified only the "bare minimum."

## II. Discussion

On appeal Acevedo-Fitz argues that the district court erred in finding that he did not qualify for the safety valve. The defendant contends that his May 2013 letter—which he tendered to the government before sentencing—fully disclosed his involvement in the conspiracy, including the identity of heroin sources and customers, quantities of drugs sold, compensation structure, and his participation in eight specific transactions. He insists that this letter cured his earlier lies, and that there is no evidence that he withheld any information. Therefore, he argues, his submission was timely and satisfied the requirements for safety-valve relief. Acevedo-Fitz bore the burden of proving by a preponderance of the evidence "that he provided a full and honest disclosure." *United States v. Montes*, 381 F.3d 631, 637 (7th Cir. 2004); *see United States v. Ramirez*, 94 F.3d 1095, 1101 (7th Cir. 1996) (same). We review a district court's refusal to apply the safety valve for clear error. *United States v. Corson*, 579 F.3d 804, 813 (7th Cir. 2009).

To qualify for the safety valve, a defendant must satisfy five statutory elements. *See* 18 U.S.C. § 3553(f). The fifth element is that, "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the

offense or offenses that were part of the same course of conduct or of a common scheme or plan." *Id*. § 3553(f)(5). Congress intended that the safety valve be limited to the low-level defendant who can "demonstrate that he has made a good faith attempt to cooperate with the authorities." *United States v. Arrington*, 73 F.3d 144, 148 (7th Cir. 1996); *see Corson*, 579 F.3d at 814; *Montes*, 381 F.3d at 634; *United States v. Marin*, 144 F.3d 1085, 1095 (7th Cir. 1998). We have long held the view that lying is inconsistent with a good-faith effort to cooperate, and thus a sentencing judge may refuse the safety valve to a defendant who was caught lying during safety-valve debriefings. *See Montes*, 381 F.3d at 637 (explaining that defendant's "lack of candor was an appropriate fact for the court to consider in determining eligibility under the safety valve provision"); *United States v. Ponce*, 358 F.3d 466, 468 (7th Cir. 2004) ("[A] district court may consider a defendant's lack of candor in determining eligibility under the safety-valve provision."); *United States v. Alvarado*, 326 F.3d 857, 861 (7th Cir. 2003) ("[D]efendants who mislead the government do not fall within the class that the safety valve statute was intended to protect: those who genuinely and fully disclose all the information they possess."); *United States v. Rammuno*, 133 F.3d 476, 882 (7th Cir. 1998) (agreeing with district court's conclusion that defendant who was caught in "lie after lie" had "forfeited his opportunity to benefit from the Guidelines' safety valve").

Acevedo-Fitz essentially asks that we abandon this established precedent. His premise is that the timing and truthfulness of a defendant's disclosures are unrelated inquiries. Thus, Acevedo-Fitz apparently contends, he was free to lie to the

government so long as, if found out, he retracted his lies and made a full, truthful disclosure before the sentencing hearing. That reading of § 3553(f)(5)—that a defendant seeking relief under the safety valve may lie with impunity right up to the moment of sentencing—has been accepted by several of our sister circuits. *See Unites States v. Rodriguez*, 676 F.3d 183, 190–91 (D.C. Cir. 2012) (concluding that defendant who lies during safety-valve debriefings remains eligible for relief if he comes clean before sentencing); *United States v. Aidoo*, 670 F.3d 600, 610 (4th Cir. 2012) ("[A] defendant's lies about an unrelated matter or later-corrected lies about the offense do not automatically foreclose application of the safety valve."); *United States v. Mejia-Pimental*, 477 F.3d 1100, 1106 (9th Cir. 2006) (concluding that defendant acts in good faith so long as his "ultimate proffer is truthful and complete"); *United States v. Gomez-Perez*, 452 F.3d 739, 741–42 (8th Cir. 2006) (explaining that defendant who lies during safety-valve debriefings still is eligible for relief if sentencing judge is persuaded that last version is truthful and complete); *United States v. Brownlee*, 204 F.3d 1302, 1304 (11th Cir. 2000) (explicitly rejecting our conclusions that defendants who seek safety valve must make good-faith effort to cooperate with government, and that lies are not consistent with good faith); *United States v. Schreiber*, 191 F.3d 103, 106 (2d Cir. 1999) ("[T]he text [of § 3553(f)(5)] provides no basis for distinguishing between defendants who provide the authorities only with truthful information and those who provide false information before finally telling the truth.").

None of these decisions persuades us to retreat from our common-sense understanding that a defendant who intention-

ally lies while seeking to benefit from the safety valve is not acting in good faith and is not within the class of offenders whom Congress intended to protect from potentially harsh statutory minimum penalties. The point of § 3553(f)(5) is that a defendant who *waits until the last minute* to seek the safety valve will not be penalized for his tardiness, but tardiness is very different from trying repeatedly to deceive the government until time has run out. And what Acevedo-Fitz did was the latter. The statements he made during the January 2013 debriefings not only were demonstrably false in light of the recorded telephone conversations, but those statements also contradict what Acevedo-Fitz had said in his signed Petition to Enter a Plea of Guilty and again under oath during the plea colloquy. Thus, his effort in this court to discount his misstatements as the product of forgetfulness rather than an intentional effort to deceive is frivolous. And it follows that he forfeited his eligibility for the safety valve by lying, i.e., trying to secure a sentencing benefit through bad faith.

In any event, the district court gave Acevedo-Fitz the benefit of the doubt and evaluated his May 2013 letter alongside the two safety-valve debriefings. And still, the court found, the defendant's supposed cooperation was "too little too late, with emphasis on the too little." That conclusion is not clearly erroneous.

A defendant cannot meet his burden under the safety valve if the government challenges the "truthfulness, accuracy, or completeness" of his information and he "does not produce anything to persuade the district court that his submissions are truthful and complete." *United States v. Nunez*, 627 F.3d 274, 280 (7th Cir. 2010); *see also United States v. Martinez*, 301 F.3d

860, 866 (7th Cir. 2002). The district court recognized that Acevedo-Fitz's letter was not a complete disclosure and instead represented the "bare minimum" he was "willing to sign on for." A defendant is not entitled to the safety valve when he provides only limited information instead of complete disclosure. *See Nunez*, 627 F.3d at 282 (noting that district court's decision not to apply safety valve could be upheld based solely on defendant's decision to limit discussion topics during debriefing); *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997) (safety-valve burden not met when statement contained denials and little information concerning commission of offense). Moreover, even in those circuits where prior lies are not deemed to be evidence of bad faith, the sentencing court may take those lies into account in deciding if the defendant's current statements are truthful. *See Aidoo*, 670 F.3d at 610; *Brownlee*, 204 F.3d at 1305; *see also United States v. Galvon-Manzo*, 642 F.3d 1260, 1269–70 (10th Cir. 2011) (concluding that district court properly relied on defendant's two prior untruthful interviews when concluding safety valve did not apply, even though defendant filed last-minute affidavit). Acevedo-Fitz's lack of cooperation during his safety-valve debriefings and his resistance to admitting irrefutable offense conduct caused the government to challenge the completeness and truthfulness of his later written disclosures, a challenge that could not be countered with a bare assertion that his May 2013 letter was complete and truthful. *See Montes*, 381 F.3d at 637. And since Acevedo-Fitz did nothing more than that, he did not meet his burden under § 3553(f).

## III. Conclusion

Accordingly, we affirm the defendant's sentence.