**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 9, 2014
Decided August 14, 2014

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 14-1001

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Western Division. |
| *v.* | No. 3:12-cr-50053 |
| CARLOS ENRIQUE PONCE-PEREZ, *Defendant-Appellant*. | Frederick J. Kapala, *Judge*. |

**O R D E R**

Carlos Ponce-Perez appeals the denial of a "safety-valve" reduction of his sentence for arranging a sale of heroin and methamphetamine. Because the district court did not clearly err in finding that Ponce-Perez had not fully and truthfully provided the information he knew about the sale, we affirm the sentence.

Ponce-Perez pleaded guilty to possessing with intent to distribute heroin and methamphetamine. *See* 21 U.S.C. § 841(a)(1). A probation officer calculated a total

offense level of 31 and criminal-history category of I, which would have yielded a guidelines imprisonment range of 108 to 135 months, but the statutory minimum for Ponce-Perez's drug offense set a floor for the low end at 120 months. *See* 21 U.S.C. § 841(b)(1)(A). Ponce-Perez contended that he should nonetheless be sentenced below the minimum because he qualified for the so-called safety valve, having provided information to the government about the drug sale, and because he was not an organizer in the drug outfit. *See* 18 U.S.C. § 3553(f); U.S.S.G. §§ 5C1.2, 3B1.1(c). The government responded that he was ineligible for the safety valve because he had not truthfully provided all the information he knew relating to the offense. *See* 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5).

The parties stipulated the following facts. Ponce-Perez negotiated a sale of $80,000 worth of heroin and methamphetamine to a police informant. After a face-to-face meeting and a series of phone calls and text messages, Ponce-Perez agreed to deliver the drugs at a highway rest-stop in Belvidere, Illinois. Five days before the delivery, in Phoenix, Arizona, Ponce-Perez gave Pedro Amaya-Ibarra (Ponce-Perez's codefendant in the district court) a laptop case with the heroin and methamphetamine inside. At the appointed time, Ponce-Perez, Amaya-Ibarra, and the informant drove separately to the rest-stop. Ponce-Perez told the informant that the drugs were in the truck driven by Amaya-Ibarra, who flashed the headlights as a signal. Police officers (who were watching the transaction) converged and arrested Ponce-Perez and Amaya-Ibarra.

The district court held a hearing at which Ponce-Perez testified that this was his first and only involvement with the drug trade. Still owing money to the "coyote" who smuggled him into the United States from Mexico, named "Arturo," Ponce-Perez agreed to arrange the drug deal on behalf of another man, "Pariente." He maintained he did not know Pariente's or Arturo's full names or phone numbers, and had no other information to help locate them, other than suggesting vaguely to look in "the places that we would hang out at" (presumably referring to a restaurant in Phoenix where he met with Pariente and the town in Mexico where he hired Arturo). He also testified that he did not know where the drugs came from, that his only job was to introduce the buyer and the driver, and that he got lost on his way from Phoenix to Belvidere and ended up in Wisconsin at one point. He denied telling Amaya-Ibarra to flash the truck's headlights or seeing the lights flash.

The district court concluded that Ponce-Perez had failed to provide a full and truthful disclosure and was thus ineligible for the safety valve. Specifically, the court

disbelieved Ponce-Perez's claim that this was his first involvement with drug trafficking, when the sale was for a sizable $80,000 worth of cocaine and methamphetamine. Moreover, the court continued, Ponce-Perez's denial that he told Amaya-Ibarra to flash the truck's headlights was inconsistent with the accounts of the informant and police officers, as agreed upon in the stipulated facts. Finally, the court noted that Ponce-Perez failed to provide the government with information to identify the drug supplier Pariente or the coyote Arturo.

The district court declined to raise Ponce-Perez's guidelines offense level for organizing the drug deal, however, and thus arrived at a total offense level of 29, which yielded a final guidelines "range" of 120 months (due to the statutory minimum). The court sentenced Ponce-Perez to 120 months' imprisonment. Ponce-Perez appeals the district court's denial of a safety-valve reduction (the only ruling the appeal waiver in his plea agreement allows him to challenge).

Ponce-Perez challenges the district court's finding that he did not fully and truthfully disclose everything he knew about the drug deal, disqualifying him for a safety-valve reduction. He first contends that the court was wrong to disbelieve his assertion that this was his first involvement with drug trafficking because the facts that he got lost and did not transport the drugs himself show that he was a "new employee." Further, he insists, his denial that the truck's headlights were flashed to signal the location of the drugs concerned an insignificant detail; he implies that the inconsistency could have been the product of his difficulty with the English language (a difficulty he does not substantiate beyond an assertion at oral argument).

But to succeed on appeal Ponce-Perez must show that the district court clearly erred in disbelieving him and denying him a safety-valve reduction, *United States v. Acevedo-Fitz*, 739 F.3d 967, 970 (7th Cir. 2014); *United States v. Nunez*, 627 F.3d 274, 279 (7th Cir. 2010), and district-court credibility determinations "can virtually never be clear error." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985); *United States v. Biggs*, 491 F.3d 616, 621 n.1 (7th Cir. 2007); *United States v. Williams*, 209 F.3d 940, 943 (7th Cir. 2000). The district court's rationale for discrediting Ponce-Perez—the size of the $80,000 drug deal belying his inexperience and his denial of the stipulated fact that the truck flashed its headlights—is reasonable and sufficient. *See United States v. Olivas-Ramirez*, 487 F.3d 512, 517 (7th Cir. 2007) (no safety-valve reduction when defendant's claims that he never before had cooked methamphetamine and did not know that chemicals he handled were ingredients for the drug were unbelievable); *United States v. Montes*, 381 F.3d 631, 632, 637 (7th Cir. 2004) (no reduction when defendant admitted in

plea agreement to receiving drugs but denied receipt in safety-valve proffer); *United States v. Alvarado-Rivera*, 412 F.3d 942, 948 (8th Cir. 2005) (no reduction when defendant claimed to be new dealer with one customer but large amount of drugs found at home and defendant had wired between $11,000 and $99,000 to Mexico).

Ponce-Perez next contends that the district court clearly erred in relying on his reticence about the drug supplier and the coyote who smuggled him into the country because he told the government to look in the "hang-outs where these people are known to frequent." This vague suggestion is of little value; in light of the district court's finding that Ponce-Perez was experienced in the drug trade, it was reasonable for the court to conclude that he was withholding identifying information about the supplier that could have lead to his capture. *See United States v. Martinez*, 301 F.3d 860, 866 (7th Cir. 2002) (no safety-valve reduction when defendant gave no information about source of drugs); *United States v. Ludwig*, 641 F.3d 1243, 1255 (10th Cir. 2011) (no reduction when defendant claimed he knew nothing about drug supplier beyond first name); *United States v. Gales*, 603 F.3d 49, 51, 54 (D.C. Cir. 2010) (same). In his reply brief Ponce-Perez persists: information about the coyote is irrelevant to his drug offense. Putting aside his forfeiture of the point by not raising it in his opening brief, *United States v. Banas*, 712 F.3d 1006, 1010 n.1 (7th Cir. 2013); *United States v. Carter*, 695 F.3d 690, 701 n.6 (7th Cir. 2012), it does not negate his failure to help identify Pariente, the supplier.

Finally, Ponce-Perez suggests that the government opposes a safety-valve reduction to punish him for not cooperating sooner. But the reasons behind the government's arguments are neither here nor there when reviewing the district court's credibility determination for clear error, and the government's discretionary decisions to pursue particular sentences are themselves improper only when based on motives that are unconstitutionally invidious or wholly unrelated to any legitimate governmental end, *see Wade v. United States*, 504 U.S. 181, 185–86 (1992); *United States v. Miller*, 458 F.3d 603, 605 (7th Cir. 2006) (government's refusal to file substantial-assistance motion for below-guidelines sentence proper when defendant "was not forthcoming in reference to his cocaine source"). Ponce-Perez does not identify any such improper motive, and none is plausible.

Accordingly, we AFFIRM Ponce-Perez's sentence.