In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 13-3748 & 14-1300

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

REYNALDO ORTIZ,

*Defendant-Appellant.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-cr-00686-1 — **Robert W. Gettleman**, *Judge.*

ARGUED OCTOBER 30, 2014 — DECIDED JANUARY 12, 2015

Before WILLIAMS, TINDER, and HAMILTON, *Circuit Judges.*

TINDER, *Circuit Judge.* Reynaldo Ortiz pleaded guilty to
conspiracy to possess heroin with the intent to distribute, *see*
21 U.S.C. §§ 841(a)(1), 846, and received the statutory mini-
mum prison sentence of 120 months. He argues that his co-
operation with law enforcement after his arrest qualified
him for "safety valve" relief from the statutory minimum.
*See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. The district court de-
cided, however, that Ortiz's cooperation did not amount to

the full and truthful proffer of information required for application of the safety valve. We affirm.

## I. BACKGROUND

In September 2011, a confidential informant reported to agents of the Drug Enforcement Administration (DEA) that Ortiz and his wife Linda Vargas-Jurado had offered the informant $10,000 to drive a truck containing drugs from the Mexican border to Chicago. The informant refused to travel to Mexico but agreed to transport the truck from Texas for $5,000. Ortiz then provided the informant with $1,000 for general travel expenses and the purchase of a cell phone and an airplane ticket to Texas. In cooperation with federal agents, the informant completed the trip from Texas to Chicago and delivered the truck to DEA possession. DEA agents found two kilograms of heroin hidden in a fire extinguisher inside the truck.

When Ortiz and Vargas-Jurado did not hear from the informant on his arrival as planned, they began a frantic search for the informant and the truck. On September 30, 2011, at the same time DEA agents were searching the truck, Vargas-Jurado called the informant to ask where he was and told him that she needed the truck to deliver it, but did not disclose to whom it was to be delivered. Then, on October 2, Ortiz visited the residence of the informant's family and told them that he and his wife needed the truck immediately. Ortiz insists that no threats were made, though the government maintains otherwise. The same day, Vargas-Jurado drove the couple's 16-year-old son and one of his friends to an area where the informant lived, and the friend shot someone matching the informant's description (but actually an innocent bystander) multiple times. The next day, Octo-

ber 3, the informant called Ortiz and Vargas-Jurado under the supervision of DEA agents and reported that he had been arrested. Ortiz told the informant that he could see the truck in a police parking lot, and officers confirmed that Ortiz and Vargas-Jurado had sped up to the parking lot in a vehicle matching the description of the one used in the shooting. As the couple drove up, Vargas-Jurado hung out the window attempting to take pictures of the truck on a cell phone. Ortiz and Vargas-Jurado were arrested shortly thereafter.

After the arrests, officers separated Ortiz and Vargas-Jurado for questioning. Special Agent Louis Gade interviewed Ortiz and recorded notes from the interview. According to those notes, Ortiz stated that he and his wife initially had been asked by his brother-in-law, Santiago Vargas, to carry drugs to Chicago. Ortiz said that they had refused the offer but that he then recruited a friend—the confidential informant—to transport the drugs. When the informant went missing, Ortiz explained, he and his wife searched for the truck under the direction of an associate of Vargas who communicated with the couple through increasingly threatening phone calls. Ortiz provided the first name of the associate and his phone number, and Vargas-Jurado later provided his full name, Hector Alcantra-Emeterio.

During Ortiz's interview, another officer told Agent Gade that Vargas-Jurado had admitted to her role in the shooting. When Gade asked Ortiz about the shooting, Ortiz denied any involvement and claimed that his wife had nothing to do with it. Ortiz admitted, however, to visiting the informant's family on October 2 and 3, 2011, to urge them to alert the informant that Ortiz and his wife needed the truck

immediately. He claimed that he and his wife acted out of fear for their safety because Alcantra-Emeterio had threatened them that "something will go wrong if he didn't get his vehicle back." Ortiz said that he was estranged from his son, who he believed had "some dealings" with Alcantra-Emeterio and had joined the Latin Kings.

After being charged with conspiracy to distribute heroin, Ortiz moved to suppress his post-arrest statements on the basis that he had been arrested without probable cause and that he had not been given *Miranda* warnings before being interviewed. In support of that motion, Ortiz provided an affidavit asserting that he was told to answer questions without counsel and that he made inculpating statements before signing a form waiving his right to an attorney. At an evidentiary hearing, however, Agent Gade testified that, before Ortiz made any inculpating statements, Gade read him the *Miranda* warnings and he waived his right to an attorney orally and in writing. Gade added that the information Ortiz provided about who he believed to be the source of the narcotics helped with the investigation. The district court credited Gade's testimony and denied Ortiz's motion to suppress.

In March 2013, nearly a year and a half after being indicted, Ortiz pleaded guilty without a written plea agreement. A probation officer calculated an advisory guideline imprisonment range of 151 to 188 months. That calculation included an offense level increase of two for obstruction of justice because, in the probation officer's view, Ortiz made materially false statements in the affidavit he submitted in support of his motion to suppress. The probation officer also recom-

mended that the court refuse to apply a sentencing reduction for acceptance of responsibility on the same basis.

At Ortiz's sentencing in November 2013, the district court rejected the probation officer's recommendations regarding obstruction of justice and acceptance of responsibility. The court credited Ortiz's account that his actions were "aberrant in the sense that [he and his wife are] not drug dealers" and were motivated by threats against him and his family. In light of this "imperfect coercion," the court decided that an increase for obstruction was not appropriate. After the court ruled on obstruction, the government did not oppose application of the reduction for acceptance of responsibility. The court recalculated the advisory imprisonment range as 87 to 108 months—below the statutory minimum of 120 months.

Ortiz then urged the district court to apply § 5C1.2, which allows for imposition of a sentence "without regard to any statutory minimum sentence" if the court finds that the defendant satisfies the five criteria in 18 U.S.C. § 3553(f). Those criteria include that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense," 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2), and that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan," 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5).

The government responded that § 5C1.2 did not apply because Ortiz used threats of violence against the inform-

ant's family and did not "come in to the government's office and give a full safety valve proffer." The government explained that it suspected—based on a police report from the informant's mother—that Ortiz brought another man with him during his visit to the informant's family, and that the other man called someone in Mexico who threatened to kill the informant and his family if the truck was not returned. In response, Ortiz challenged the police report as not credible. Additionally, in regard to his failure to come in for a proffer, Ortiz argued that he had provided everything he knew in his post-arrest statements. The district court asked the government what other information it would look for in a full proffer, and the prosecutor answered that he could not be sure because Ortiz never came in for additional questioning. He added that it remained unclear who the drugs were supposed to go to and who all was involved in arranging the drug transaction.

The district court concluded that, regardless of threats Ortiz may have made, he had not "proffered the type of information that 5C1.2 contemplates." The court explained: "It isn't just cooperation. We get a lot of cooperating folks in the sense that they … could wear a wire, they could arrange a deal or get some information about something that happened. They still don't get the safety valve because they haven't actually proffered their entire knowledge of the offense." The court added: "Saying when you get arrested, you know, 'I'll cooperate' or even shortly after, 'I'll cooperate,' that's a lot different than coming in and going through all the matters that [the prosecutor] just mentioned. So I cannot say there's a safety valve here." The court thus rejected application of the safety valve and imposed the statutory minimum of 120 months' imprisonment.

Fourteen days after sentencing, on December 6, 2013, Ortiz moved for a reduced sentence under Federal Rule of Criminal Procedure 35, offering to present himself for a full proffer of information and arguing that the court failed to address his mitigating arguments. On January 22, 2014, the district court held a hearing on the motion. At the hearing, the government explained that, having met with Ortiz to hear his proffer, it refused to move for a reduced sentence under Rule 35(b) because Ortiz had not provided any information beyond that provided in his initial statement. The court then denied Ortiz's motion, reasoning that, without a motion for a reduction from the government, the court had no authority to reduce Ortiz's sentence under Rule 35. Ortiz appeals both the original judgment against him and the denial of his Rule 35 motion.

## II. ANALYSIS

Ortiz's primary argument on appeal is that the district court erred in concluding that he did not satisfy the requirements of § 5C1.2(a)(5) by providing full and truthful information about his offense. He emphasizes that Agent Gade testified that the information he provided after his arrest was helpful to the investigation. He maintains that he did not have any additional information about the recipient of the heroin or any other aspect of the offense. The completeness of his initial statement is confirmed, he argues, by the fact that nothing useful was gleaned from his post-sentencing proffer.

To be eligible for safety-valve relief, Ortiz had to prove by a preponderance of the evidence that he provided the government with "all information" he knew about his offense or related to the same course of conduct or common

scheme or plan. *See United States v. Acevedo-Fitz*, 739 F.3d 967, 970 (7th Cir. 2014); *United States v. Olivas-Ramirez*, 487 F.3d 512, 517 (7th Cir. 2007). "A defendant is not entitled to the safety valve when he provides only limited information instead of complete disclosure." *Acevedo-Fitz*, 739 F.3d at 972; *see United States v. Montes*, 381 F.3d 631, 636 (7th Cir. 2004) (holding that the "plainly broad language [of § 5C1.2(a)(5)] suggests that any and all information that the defendant possesses concerning the offense must be provided to the Government") (quotation marks omitted). We review for clear error the district court's findings regarding Ortiz's eligibility for the safety valve. *See Acevedo-Fitz*, 739 F.3d at 970; *Olivas-Ramirez*, 487 F.3d at 516.

Ortiz has presented no persuasive reason to find clear error here. The district court gave a nuanced explanation of why it found that Ortiz had offered some cooperation but did not provide a full proffer of all information he knew. Ortiz's mere assertion that he does not have additional information is not enough to undermine the court's finding. *See United States v. Nunez*, 627 F.3d 274, 280 (7th Cir. 2010) ("A defendant 'cannot meet [the safety valve] burden if the government challenged the truthfulness, accuracy, or completeness of his statements and he produced nothing to persuade the district court that his disclosures were truthful and complete.'") (quoting *United States v. Martinez,* 301 F.3d 860, 866 (7th Cir. 2002)). As the government notes, there were many facts left unknown here, including where the truck was supposed to be delivered if recovered and who would pick it up, and Ortiz did not assist the government's investigation during the two years that passed from his initial post-arrest statements in October 2011 until his sentencing in November 2013. Ortiz emphasizes that the information he pro-

vided after his arrest proved useful to the investigation, but for purposes of the safety valve, "information need not necessarily be useful to the government, as long as a defendant made a good faith effort to cooperate fully." *United States v. Corson*, 579 F.3d 804, 814 (7th Cir. 2009). The district court committed no clear error in finding that Ortiz's failure to present himself for additional proffers of information undermined his assertion of full, good faith cooperation.

We addressed a similar situation in *United States v. Galbraith*, 200 F.3d 1006, 1016 (7th Cir. 2000). There, as with Ortiz, Galbraith gave an initial statement to law enforcement after his arrest but did not give any additional proffers expanding on that statement. *Id.* Information from Galbraith's codefendants, however, suggested that there was more to the offense than Galbraith let on. *Id.* The district court thus found that Galbraith "did not truthfully provide all information he had," and we upheld that finding. *Id.* The same analysis applies here, where the government's investigation raised questions about the destination for the drugs and possible threats to the informant's family, and yet Ortiz did not supplement his initial statement before sentencing.

Ortiz contends that his post-sentencing proffer entitled him to the safety valve, but we disagree. The safety-valve provisions clearly require that a defendant's proffer of information occur "not later than the time of the sentencing hearing." Moreover, as the government emphasizes, by the time Ortiz actually presented himself for a proffer, more than 14 days had passed since sentencing. At that point, the district court lacked jurisdiction to reduce Ortiz's sentence under Rule 35 without a motion from the government.

*See United States v. Smith*, 438 F.3d 796, 799 (7th Cir. 2006); *United States v. Salinas*, 365 F.3d 582, 586 (7th Cir. 2004).

There is also evidence that, just a day before Ortiz's wife and son were involved in trying to shoot the informant, Ortiz brought a man to the informant's family who, through a phone call, threatened death to the informant and his family. Using credible threats of violence in connection with an offense disqualifies a defendant from safety-valve relief, 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2), and we have upheld even a single intimidating confrontation as enough to constitute a credible threat, *see United States v. Johnson*, 497 F.3d 723, 726 (7th Cir. 2007). The district court had no need to make formal findings about the credibility of the government's evidence about the threats given its conclusion that Ortiz failed to make a full proffer, and we express no opinion about the evidence's reliability. But we note that the alleged threats, if substantiated, would have provided an alternative ground for denying safety-valve relief.

Lastly, Ortiz argues that the district court failed to consider his mitigating arguments related to the factors in 18 U.S.C. § 3553. But the district court properly refused to apply the safety valve, so the court lacked discretion to impose a sentence below the statutory minimum. *See United States v. Zuno*, 731 F.3d 718, 724 (7th Cir. 2013); *United States v. Brucker*, 646 F.3d 1012, 1016 (7th Cir. 2011). Additionally, because the statutory minimum controls, a remand for further consideration of sentencing factors could not result in a lesser sentence. *See United States v. Douglas*, 569 F.3d 635, 636 (7th Cir. 2009).

Accordingly, Ortiz's sentence is AFFIRMED.