NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0428n.06

Case No. 21-2653

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 24, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| MARK ANTHONY MARTIN, | ) | MICHIGAN |
| Defendant-Appellant. | ) ) | |

Before: GUY, WHITE, and LARSEN, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.** Mark Martin pleaded guilty to participating in both a drug distribution conspiracy and a related money laundering conspiracy. Martin appeals his concurrent sentences of 120-months of imprisonment, arguing that the district court clearly erred in rejecting application of the safety valve provision of 18 U.S.C. § 3553(f). We affirm.

I.

An investigation into drug trafficking in Grand Rapids, Michigan, uncovered a conspiracy to distribute drugs—including methamphetamine, fentanyl, heroin, cocaine and marijuana—that Johaun Howland obtained by mail from a supplier named Calvin Colbert, Jr., in Los Angeles, California. Using various methods, including a Title III wiretap of Howland's cell phone, tracking of packages, tracing of money transfers, surveillance, and controlled buys of drugs, law enforcement gathered enough evidence to bring charges in a series of superseding indictments

against Howland, Colbert, and a number of other coconspirators. In September 2018, Mark Martin was added as a defendant by the Second Superseding Indictment. Ultimately, in February 2021, Martin pleaded guilty as charged to Counts 1 and 2 of the Sixth Superseding Indictment—conspiring to distribute and possess with intent to distribute controlled substances, 21 U.S.C. §§ 846, and 841(a)(1), (b)(1)(A)(vi), (b)(1)(B)(ii), (b)(1)(C), (b)(1)(D); and conspiring to launder money to promote the drug conspiracy and conceal the illegal nature of the funds generated, 18 U.S.C. § 1956(h).

At the change-of-plea hearing, Martin confirmed under oath that each statement of the factual basis set forth in paragraph 6 of his plea agreement was true. That is, in 2017 and 2018, Martin conspired with Howland and others to distribute and possess with intent to distribute controlled substances, including 400 grams or more of fentanyl, 500 grams or more of cocaine, and other quantities of heroin and marijuana, in the Grand Rapids area. Martin knew Howland was receiving large quantities of drugs via mail from Colbert in California, and Martin admitted that he "assisted Howland in receiving those packages" and "further distributed the controlled substances once received in Grand Rapids."

More specifically, Martin admitted that he flew to California with Howland to visit Colbert in February 2018. And, while they were in California, Howland shipped a package to a nominee (*i.e.*, a person who agreed to accept delivery) in Kalamazoo, Michigan; but that package was intercepted in transit and found to contain "approximately 1 kilogram of cocaine, over 80 grams of heroin, and over 900 grams of fentanyl." After that package failed to arrive, Martin personally "called the U.S. Postal Service multiple times to ask about [its] status and whereabouts." Investigators returned his calls the following day, March 2, 2018, and Martin told them to call Howland. Also on March 2, 2018, a package sent from San Bernardino, California, was

intercepted before it could be delivered to the home where Martin resided with his parents. That package contained approximately 1.4 kilograms of marijuana.

Martin also admitted that, in May 2018, investigators intercepted a package containing 816 grams of cocaine that was sent from Las Vegas, Nevada, to the residence of one of Martin's codefendants in Michigan. When the U.S. Postal Inspectors falsely marked the package as "delivered" in the tracking system, a wiretap captured a call between Martin and Howland that included discussion of the missing packages and "that it would be safer to drive from Indiana than rely on the mail." Finally, Martin admitted that he sold drugs, "including cocaine, heroin, and fentanyl, to other individuals in Grand Rapids." During the plea hearing, the prosecutor explained that the government could show Martin was followed and observed "engag[ing] in what the officers would testify appeared to be hand-to-hand transactions with drug customers, one of whom was a cooperating informant."

With respect to the money laundering conspiracy, Martin admitted that, in 2017 and 2018, he wired money to other coconspirators in amounts under $3,000 using "Walmart to Walmart" remitting services in furtherance of the conspiracy and used nominees to conceal the illegal source of the funds. Specifically, Martin admitted that he wired $2,500 to Howland, who was in California obtaining more drugs, and also wired $1,800 to "Eric Garcia" and $1,500 to "Cavon Ziegler," both of whom were nominees for Colbert in California. Lastly, Martin admitted that he was "a knowing and voluntary participant in the drug trafficking and money laundering conspiracies charged in the Sixth Superseding Indictment."

As is central to this appeal, Martin's plea agreement specified that, unless the district court determined that he satisfied the criteria for sentence under § 3553(f)'s safety valve, Martin would

be subject to a mandatory minimum sentence of 10 years on Count 1.[1]  According to the final

PSR's calculations, without application of the safety valve, Martin's base offense level would be

30 based on the quantity of drugs involved.  And, with a 2-level increase for the money laundering

conviction and a 3-level decrease for acceptance of responsibility, his total offense level would be

29.  Although an offense level of 29 and a criminal history category of II would produce a

Guidelines range of 97 to 121 months, the mandatory minimum penalty made the applicable range

120 to 121 months instead.  If, however, Martin could benefit from the safety valve, his offense

level would be reduced to 27, the Guidelines range would be 78 to 97 months, *see* U.S. Sentencing

Guidelines Manual (USSG) § 2D1.1(b)(18) (U.S. Sent'g Comm'n 2021) (formerly

§ 2D1.1(b)(17)), and he could be sentenced "without regard to any statutory minimum sentence,"

18 U.S.C. § 3553(f).  The initial PSR recommended a Guidelines range of 78 to 97 months because

"the defendant appears to meet the criteria set forth in 18 U.S.C. § 3553(f)(1)-(5)."

By the time of sentencing, there was no dispute that Martin satisfied the first four criteria

for application of the safety valve, but the government maintained that the fifth criteria had not

been met because Martin had not "truthfully provided to the Government all information and

evidence [Martin] has concerning the offense or offenses that were part of the same course of

conduct or of a common scheme or plan."  PageID 5760-61; 18 U.S.C. § 3553(f)(5).  Shortly

before sentencing, Martin gave a proffer interview aimed at satisfying this requirement, which

defense counsel acknowledged "did not go as smoothly as it should have" and the prosecutor

argued fell short of a truthful disclosure of "all the information he possesses that concerns his

offense or related offenses."  Opposing characterizations of the proffer were presented at

---

[1] The statutory mandatory minimum was triggered because the offense involved "400 grams or more of a mixture or substance containing" fentanyl.  *See* 21 U.S.C. §§ 846 and 841(b)(1)(A)(vi).

sentencing and in the parties' respective sentencing memoranda. The United States Probation Department also interviewed Martin in anticipation of filing its PSR. The district court found that Martin "did not fully cooperate" with the government and therefore did not satisfy the requirement of § 3553(f)(5). Absent the safety valve, the district court sentenced Martin to concurrent 120-month terms of imprisonment on Counts 1 and 2. This appeal followed.

## II.

A district court's interpretation of a statute or Guideline provision is reviewed de novo, while its factual determination of whether to apply it in a particular case is reviewed for clear error. *See United States v. Adu*, 82 F.3d 119, 124 (6th Cir. 1996). Congress enacted the safety valve as a way for some of the least culpable offenders to escape certain mandatory minimum penalties. *See United States v. Barron*, 940 F.3d 903, 913 (6th Cir. 2019). If, after the government has a chance to make a recommendation, the district court finds at sentencing that the safety valve's five criteria are met, "the court shall impose a sentence pursuant to the guidelines . . . without regard to any statutory minimum sentence." 18 U.S.C. § 3553(f). The statute also authorized the U.S. Sentencing Commission to promulgate Guidelines to effectuate its purposes, which are found in USSG §§ 5C1.2 and 2D1.1(b)(18) (formerly § 2D1.1(b)(17)).

The defendant bears the burden to prove by a preponderance of the evidence that he meets "each and every criterion" of § 3553(f). *Barron*, 940 F.3d at 914 (quoting *United States v. Bazel*, 80 F.3d 1140, 1142 (6th Cir. 1996)). Whether a defendant meets the fifth criterion "is a fact-specific" determination that we review for clear error. *Adu*, 82 F.3d at 124. It requires that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C.

§ 3553(f)(5). This provision adds the caveat that "the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." *Id*.; *see also* USSG § 5C1.2(a)(5).

When a defendant claims to have satisfied his burden in this regard, the government may challenge his entitlement to relief under the safety valve. *Barron*, 940 F.3d at 917. It is not necessary for the government to offer affirmative evidence of untruthfulness and it may impeach the defendant's claim as long as it relies on "a fact-based rebuttal, not rank speculation." *Id*. (quoting *United States v. Collins*, 924 F.3d 436, 442-44 (7th Cir. 2019)). Here, the government insisted that Martin was not forthcoming in the proffer interview during which Martin denied previously admitted conduct until confronted with countervailing evidence and claimed not to know anything more about relevant conduct involving others. In weighing Martin's credibility, the district court observed that Martin's written responses to the probation officer had been "all over the place in terms of what he did and what he knew" so as to minimize his own behavior and culpability. It was not clearly erroneous to find that Martin had not fully cooperated by providing all the information he had concerning the offenses of conviction and all relevant conduct. *See Adu*, 82 F.3d at 124.

To the extent that Martin suggests that his admission to the factual basis for his guilty pleas should entitle him to safety valve relief, we have said this fifth criterion "clearly require[s] an affirmative act by the defendant truthfully disclosing all the information he possesses that concerns his offense or related offenses." *Id*. Martin contends that his guilty-plea admissions were the affirmative act, and that, as such, the district court should not have considered his statements at the proffer session or his PSR interview in deciding whether to apply the safety valve. He cites

*United States v. Carpenter*, 142 F.3d 333 (6th Cir. 1998), in support but the case does not help him.

*Carpenter* addressed whether the defendant, who had truthfully given the government "all information and evidence," as required by § 3553(f)(5), became disqualified from safety valve relief by later refusing to testify before a grand jury and at trial. *Id.* at 335. We analyzed the phrase "to the [g]overnment" in § 3553(f)(5) and concluded that a defendant's statutory "obligation is to provide information and evidence to the government, not to a court" or grand jury. *Id.* at 336. From this, Martin argues that since he did not have to proffer, what he said during his proffer is irrelevant. We reject the premise of this argument. Although § 3553(f)(5) does not expressly require a proffer session, the proffer session here was the means by which the government was to obtain "all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." *See* 18 U.S.C. § 3553(f)(5). The proffer session here is not analogous to the request for grand and petit jury testimony in *Carpenter*.

Attempting to bring his argument closer to *Carpenter*, Martin argues that the Probation Department is not "the government" for purposes of § 3553(f)(5). Appellant Br. at 16; Reply Br. at 7-8. We need not decide whether Martin is correct because his proffer—which indisputably involved "the government"—was problematic as well.[2] The district court noted the government's argument that Martin "changed his story as to what happened and clearly did not tell the [g]overnment all that he knew," and concluded:

---

[2] Although Martin places great weight on the district court's statement that "what really put me over the edge on this was . . . his responses to the questions from the presentence [investigation report] writer," (PageID 5762-63), it seems clear that the district court considered Martin's proffer in concluding that he did not qualify for safety valve relief.

> Well, he's kind of back and forth all over the place in terms of what he did and what he knew, and I really do believe that he did not fully cooperate with the [g]overnment, and that the [g]overnment is correct that he does not meet the requirements of the statute or 5C1.2.

(PageID 5763-64). We conclude the district court did not err in considering Martin's conduct at the post-plea proffer session.[3]

Nor is it sufficient that Martin qualified for an acceptance-of-responsibility adjustment to his offense level. *See Adu*, 82 F.3d at 124. Martin argues that the government already had plenty of information about the relevant conduct from its extensive investigation. But this court has rejected "an exception to the disclosure requirement based on the existence of another source for the information that the government seeks from a defendant." *United States v. Pena*, 598 F.3d 289, 293 (6th Cir. 2010).

Finally, Martin argues in the alternative that trial counsel rendered ineffective assistance in advocating for application of the safety valve. Generally, however, "a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (quoting *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir.1990)); *see also United States v. Ferguson*, 669 F.3d 756, 762

---

[3] *See United States v. Acevedo-Fitz*, 739 F.3d 967, 970-71 (7th Cir. 2014) ("We have long held the view that lying is inconsistent with a good-faith effort to cooperate, and thus a sentencing judge may refuse the safety valve to a defendant who was caught lying during [post-plea] safety-valve debriefings."); *United States v. Padilla-Colon*, 578 F.3d 23, 31-32 (1st Cir. 2009) ("Inconsistencies between statements made during the [post-plea] proffer and statements made to the authorities on other occasions are not necessarily disqualifying. But the court may legitimately consider such inconsistencies in deciding on the truthfulness of the proffer."); *United States v. Sanchez*, 475 F.3d 978, 981 (8th Cir. 2007) ("Sanchez's statements and actions at his proffer [after pleading guilty] provided the district court with grounds to deny him safety valve relief. Refusing to answer questions or respond to inquiries about relevant conduct is inconsistent with providing a complete and truthful account of that conduct.").

(6th Cir. 2012) (discussing cases).  The preferred route for a defendant in federal custody to bring a claim of ineffective assistance of trial counsel is by a motion under 28 U.S.C. § 2255.  *Ferguson*, 669 F.3d at 762 (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)).  Because the record is inadequately developed to determine either the adequacy of counsel's representation or whether any deficiency was prejudicial, we decline to address Martin's claim of ineffective assistance of counsel.

  **AFFIRMED**.