# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2426

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

MOISES PONCE,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 1139—**Suzanne B. Conlon**, *Judge.*

———————

ARGUED DECEMBER 17, 2003—DECIDED FEBRUARY 13, 2004

———————

Before KANNE, ROVNER, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Moises Ponce challenges the sentence he received after he pleaded guilty to conspiring to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846. He contends that the district court should have found that he was eligible for the "safety valve" exception to the statutory minimum sentence of 120 months' imprisonment. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. We affirm his sentence.

Ponce admits that he was involved in the transfer of over 1,000 kilograms of marijuana from Laredo, Texas, to Cicero, Illinois, in November 2002. His job in the transfer was to secure transportation for the drugs, and to that end he met with the owner of a Chicago area trucking company

who, unknown to Ponce, was a confidential government informant (CI). Through the CI, Ponce arranged for what turned out to be two undercover DEA agents to pick up the drugs in Laredo on November 20. Ponce denies being present for the pick-up. But he admits being in Chicago on November 22, when he and co-defendants Juan Antunez and Arnaldo Zambrano unloaded the truck at a local factory. Antunez and Zambrano were arrested on November 23, and Ponce was arrested a month later.

After his arrest Ponce had two meetings with the government. At the first meeting he told the government the names of the other participants in the crime. He also stated that he did not pay the CI any money before the transfer, that he was not present when the drugs were picked up, and that he had met co-defendant Antunez for the first time only on the day before the delivery. At the second meeting, the government presented Ponce with phone records showing that he had spoken with Antunez in the weeks leading up to the deal, and confronted him with testimony from the CI that Ponce had paid him in advance for expenses. At this point, Ponce admitted to communicating with Antunez before the transfer and to paying the CI. Ponce continued to deny, however, being present in Laredo for the pick-up.

At sentencing, Ponce objected to the fact that the presentence investigation report did not recommend a sentencing reduction under U.S.S.G. § 5C1.2. He argued that in his two proffers he had given the government all of the relevant information he had regarding his crime, most importantly the names of the other participants. The government countered that Ponce did not deserve the reduction because he was lying about not being present in Laredo during the pick-up of the drugs. According to the government, Ponce assured the CI that he would be there, and he was subsequently identified from a photograph by two DEA agents posing as drivers who maintained he was there. The

government also noted that Ponce admitted making a call to the CI from Little Rock while the drugs were in transport, and that the CI had told him that "he must have passed the truck on the interstate and that it was behind him," still on its way to Chicago. This geographic reference makes sense, the government argued, only if Ponce had himself been traveling from Laredo to Chicago. The government also noted that Ponce, unlike his co-defendants, had not been immediately forthcoming in his proffers and that he did not supply relevant information until first being confronted with contradictory evidence.

After listening to these arguments, the district court found that "[t]he government has raised serious questions about the defendant's presence in Texas at the time the shipment was loaded" and that Ponce had not established "that he was fully cooperative in providing truthful information" during his interviews. The court consequently imposed the statutory minimum sentence of ten years' imprisonment.

The sole issue on appeal is whether the district court erred in determining that Ponce failed to show that he truthfully provided all relevant information to the government. The defendant bears the burden of proving he is eligible for the safety-valve exception. *United States v. Galbraith*, 200 F.3d 1006, 1016 (7th Cir. 2000). We review the district court's determination that a defendant failed to meet his burden for clear error. *United States v. Alvarado*, 326 F.3d 857, 860 (7th Cir. 2003).

Under § 5C1.2, a defendant convicted under 21 U.S.C. § 846 will be sentenced without regard to any statutory minimum sentence if the defendant meets five criteria. The only criterion in dispute here is § 5C1.2(a)(5)—that the defendant truthfully provided the government with all the relevant information and evidence he had concerning his offense. This criterion requires a defendant to make a good-

faith attempt to cooperate with the authorities, *United States v. Ramunno*, 133 F.3d 476, 482 (7th Cir. 1998), and volunteer all the relevant information he has concerning his offense, *United States v. Arrington*, 73 F.3d 144, 148 (7th Cir. 1996).

In determining that Ponce was likely present in Laredo for the pick-up, the district court relied on the government's representations at sentencing that Ponce had told the CI that he would be there and that two DEA agents had identified him as being present. Ponce argues that these unsubstantiated representations are insufficient to call into question the veracity of his own testimony. But on the question of whether a defendant has offered a truthful and complete disclosure, the government does not bear the burden of proof; the burden is on the defendant. *Galbraith*, 200 F.3d at 1016. A district court has the discretion under § 5C1.2 to consider the government's statements regarding contradictions and omissions in a defendant's offer of information, *see United States v. Ramirez*, 94 F.3d 1095, 1102 (7th Cir. 1996); *see also United States v. Martin*, 287 F.3d 609, 618 (7th Cir. 2002) (holding that Federal Rules of Evidence do not apply at sentencing hearings), and the court here did not clearly err in finding that the government's representations cast doubt on Ponce's denial that he was present in Laredo for the drug pick-up. Notably, Ponce did not offer any evidence except for his own testimony to substantiate his version of the events. Nor does Ponce dispute that he did not volunteer relevant information at the second meeting until after first being confronted with contradictory evidence, and a district court may consider a defendant's lack of candor in determining eligibility under the safety-valve provision. *See Ramirez*, 94 F.3d at 1102.

AFFIRMED.

No. 03-2426                                                     5

**A true Copy:**

    **Teste:**

                        _____
                        *Clerk of the United States Court of*
                            *Appeals for the Seventh Circuit*