# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

No. 03-3934

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LUIS MONTES,

*Defendant-Appellant.*

————————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 CR 21—**Ruben Castillo**, *Judge.*

————————

ARGUED JUNE 16, 2004—DECIDED AUGUST 24, 2004

————————

Before COFFEY, RIPPLE and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Luis Montes pleaded guilty to possessing with intent to distribute more than five kilograms of cocaine. *See* 21 U.S.C. § 841(a)(1). The district court sentenced him to 120 months' imprisonment, the statutory minium under § 841(b)(1)(A), and to five years' supervised release. Mr. Montes appeals his sentence. He submits that the court should have granted him relief from the statutory minimum sentence under the "safety valve" provision. *See* 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I
## BACKGROUND

In January of 2003, members of a drug task force arrested Mr. Montes after seeing a man, later identified as Mr. Montes' co-defendant Francisco Barrera-Martinez ("Barrera"), hand him a duffel bag that turned out to contain cocaine. On the day of Mr. Montes' arrest, the officers had observed Barrera engaging in suspected drug activity and had followed him first to an apartment where he picked up the duffel bag and then to Mr. Montes' garage. One of the agents, Officer Kosmowski, saw Barrera drive up to the garage, exit his truck with the bag, "hand[ ] it over to" Mr. Montes and then drive away. R.88-1 at 95. After Mr. Montes carried the bag into the garage, another agent, Officer Howard, approached and detained him. During a protective sweep, Officer Howard saw what he believed to be bricks of packaged cocaine pro-truding from the bag, which was lying open on the garage floor. After Mr. Montes' arrest, the officers seized 14.97 kilograms of cocaine from the bag.

Mr. Montes entered into a written plea agreement, which stated that he "received a duffel bag containing approximately 14.97 kilograms of mixtures containing cocaine from Barrera-Martinez, and [that he] knew that the duffel bag contained a controlled substance." R.66 at 2-3. At his plea hearing, however, Mr. Montes disagreed with the Government's summary of the evidence. He denied that he physically had "received" the bag. R.89-1 at 15-16. Mr. Montes did agree that the bag was in the garage with him. *Id.* at 16. The Government noted that Mr. Montes' comment gave it "some pause con-cerning acceptance," but thought that a sufficient factual basis remained for the plea; the court accepted Mr. Montes' plea. *Id.* at 17.

Mr. Montes later met with the Government in an effort to qualify for the safety valve exception. During this proffer

interview, Mr. Montes stated that, on the afternoon of Mr. Montes' arrest, Barrera had called him and asked to borrow a car. Mr. Montes therefore went to the garage to give Barrera the keys to a Pontiac Grand Prix. Mr. Montes stated that he did not see the bag, that he did not see Barrera get the bag or anything else out of his truck and that Barrera never gave him a bag. Mr. Montes initially stated that he had not known Barrera to sell drugs. Later in the same interview, however, Mr. Montes changed his story, and stated that Barrera had called him the morning of his arrest and asked him to put some cocaine in the "traps" (hidden compartments) located in the Grand Prix. Mr. Montes stated that he did not know the quantity of what Barrera wanted to put in the traps. Mr. Montes admitted that he was going to put the cocaine in the traps in exchange for $1,000 from Barrera.

The Government also asked Mr. Montes about his roommate Manuel Martinez-Madrigal ("Madrigal"). Mr. Montes stated that Madrigal owned the Grand Prix but let him use it anytime he wanted. Mr. Montes stated that Madrigal had taught him how to use the traps in the Grand Prix, but he stated that he did not know why Madrigal had shown him the traps and that he had never put anything in the traps. Mr. Montes admitted that, on six or seven occasions, he had driven other cars for Madrigal in exchange for $1,000. He said that he had suspected, but did not know for certain, that those cars contained drugs. Mr. Montes also stated that Madrigal had told him that the cars he moved at Madrigal's direction had traps but he did not know how to open them.

The Government filed a sentencing memorandum in which it argued that Mr. Montes did not qualify for a reduced sentence under the safety valve provision because he did not provide a truthful and complete account of the offense of conviction and of the relevant conduct. The Government

characterized Mr. Montes' safety valve statement as "an attempt to minimize knowledge and participation by admitting only the barest details of the charged conduct." R.70 at 2, 6. Mr. Montes submitted a memorandum responding that he had always disputed the officers' version of his arrest (that he had exchanged the bag with Barrera), but had not denied that he possessed the bag of cocaine or that he intended to help Barrera dispose of it. Mr. Montes argued that the contradiction between his and the officers' version did not mean that he did not give truthful information about the offense. Mr. Montes also argued that he was not required to admit that, on several occasions, he had driven cars for Madrigal that he assumed held cocaine.

At sentencing, the district court heard arguments on the issue and determined that Mr. Montes did not qualify for the safety valve exception because he was not completely truthful during his proffer interview. In particular, the court found incredible Mr. Montes' insistence that he did not physically receive the bag from Barrera or even see the bag before his arrest:

> I find that the defendant has the burden of establishing that he has completely and truthfully cooperated, and it defies common sense and the testimony of officers that I found credible that that exchange did take place.
>
> I also don't believe that a bag of this quantity of cocaine just gets tossed on a garage floor for further packing, if you will, at some point in the future but for these officers pulling up.
>
> And I concluded that in the opinion that I issued, that it was the officers pulling up that caused this bag to be dropped, and that's why I'm really troubled by the fact that that has been denied.
>
> . . . .

It gives me pause then as to Mr. Montes' truthfulness in his proffer, and then it calls into question a bunch of other things that the government has called into question, which leave me at the end of the day unable to say that he's provided the truthful information that he's required to provide.

Sent. Tr. at 5-7. The district court later added: "I am given pause by Mr. Montes' denial of the exchange taking place the way I conclude that it went down based on a preponderance of the evidence and the testimony that I heard at the [suppression] hearing." *Id.* at 15. The court concluded that because Mr. Montes was "not completely truthful," when he "needed to be 100 percent truthful," he did not warrant the safety valve relief. *Id.* at 19. Accordingly, the district court sentenced Mr. Montes to the statutory ten-year minimum sentence.

## II

## ANALYSIS

### A. Background

The "safety valve" provision permits a court to sentence certain first-time, non-violent drug offenders who were not organizers of criminal activity and who made a good faith effort to cooperate with the Government to a sentence under the federal guidelines instead of the applicable statutory mandatory minimum sentence. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2; *see also United States v. Arrington*, 73 F.3d 144, 147-48 (7th Cir. 1996) (discussing the safety valve's legislative history and explaining that Congress intended to remedy the former system, under which higher-level drug offenders with information to trade often fared better than less culpable offenders because courts could impose a

sentence below the statutory minimum only when the Government filed a motion based on substantial assistance). A sentencing court "shall" apply the safety valve provision for any defendant who meets five criteria:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant *has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan*, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a) (emphasis added). The only question before us on appeal is whether the district court correctly determined that Mr. Montes did not satisfy the fifth criteria. The defendant bears the burden of proving by a preponderance of evidence his eligibility for the safety

valve. *See United States v. Ramirez*, 94 F.3d 1095, 1101 (7th Cir. 1996). We review the district court's interpretation of the safety valve provision under the statute and the sentencing guidelines de novo and its factual findings concerning a defendant's eligibility for the safety valve for clear error. *See id.* at 1099.

As we noted earlier, the Government opposed Mr. Montes' safety valve statement as an attempt to minimize his role in the drug offense by separating himself from the cocaine in the bag, by denying knowledge of his co-defendant Barrera's drug activity and by claiming that he did not know why his roommate Madrigal had shown him how to use the Grand Prix's traps. The district court concluded that Mr. Montes had failed to prove that he had provided truthful information to the Government. In particular, the court found his denial of the bag's exchange to "def[y] common sense," Sent. Tr. at 5, and, consequently, questioned the sincerity of the other safety valve statements challenged by the Government. Mr. Montes contends that his safety valve eligibility should not hinge on the fact that his statements contradicted the officers' representations that Barrera handed him the bag because: (1) whether he actually or constructively possessed the bag makes no difference for purposes of legal guilt;[1] and (2) the safety valve provision does not require that he agree with the officers' version of how the arrest took place.

## B. Scope of the Defendant's Disclosure Obligation

To address Mr. Montes' claim, we must understand the breadth of subsection (a)(5)'s requirement that the defendant disclose "all information" he has about "the offense or

---

[1] *See United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir. 1990) (holding that constructive possession suffices).

offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(a)(5). First, the application notes to § 5C1.2 define "offense or offenses that were part of the same course of conduct or of a common scheme or plan" to mean "the offense of conviction and all relevant conduct." U.S.S.G. § 5C1.2(a)(5), cmt. n.3. Section 1B1.3, in turn, defines "relevant conduct" for sentencing purposes to include

> (1)  (A) all acts and omissions committed, aided, abetted . . . by the defendant; and
>
> (B) in the case of a joint criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

U.S.S.G. § 1B1.3(a)(1).[2] The application notes to § 1B1.3 elaborate on when offenses form a "common scheme or plan" and when offenses are part of "the same course of conduct." U.S.S.G. § 1B1.3, cmt. n.9. Offenses form a "common scheme or plan" if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose or similar *modus operandi.*" *Id.* at cmt. n.9(A). Those offenses not connected sufficiently to constitute a "common scheme or plan" may

---

[2]  *See also United States v. Acosta-Olivas*, 71 F.3d 375, 378 (10th Cir. 1995) (interpreting the scope of § 3553(f) and § 5C1.2).

nonetheless be part of the "same course of conduct" if they are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* at cmt. n.9(B).

Despite Mr. Montes' claim that his candor regarding the events of his arrest is irrelevant because he admitted enough facts to render him culpable, the safety valve does not so restrict the type of information that a defendant must provide. *See Arrington*, 73 F.3d at 149 (stating that § 3553(f) requires a defendant to "disclose 'all information' concerning the course of conduct—not simply the facts that form the basis for the criminal charge"). We have considered, at least implicitly, a similar question in *United States v. Ponce*, 358 F.3d 466 (7th Cir. 2004). In *Ponce*, we affirmed the district court's refusal to apply the safety valve for the defendant who had admitted to arranging an interstate shipment of drugs and numerous related facts, but disputed the representations of undercover federal agents (whom the court credited) that he was present at the drug pick-up. *Id.* at 468-69.[3]

---

[3] *See also United States v. Thompson*, 106 F.3d 794, 801 (7th Cir. 1997) (denying safety valve relief when defendants "continued to cling to a false version of events and dispute their own culpability"); *accord United States v. Reynoso*, 239 F.3d 143, 145 (2d Cir. 2000) (affirming denial of safety valve for defendant who acknowledged distributing crack cocaine but denied having served as a drug courier or deliverer based on her unsupportable story that she had stolen the drugs); *United States v. White*, 119 F.3d 70, 74 (1st Cir. 1997) (upholding the district court's determination that defendant was untruthful in her attempt to minimize her role in a drug conspiracy); *United States v. Gambino*, 106 F.3d 1105, 1111-12 (2d Cir. 1997) (affirming denial of safety valve relief where defendant made "incredible" claims about his role in the

(continued...)

Moreover, the safety valve provision demands "all information" that the defendant has concerning the offense. This plainly broad language suggests that "any and all information that the defendant possesses concerning the offense must be provided to the Government." *United States v. Thompson*, 81 F.3d 877, 879 (9th Cir. 1996) (finding that defendant was required to reveal *all* the information he had regarding the offense, including the name of his source); *see also United States v. Alvarado*, 326 F.3d 857, 862 (7th Cir. 2003) (affirming district court's denial of safety valve where defendant admitted that he had received a shipment of drugs from his sister but had not disclosed his sister's contact information); *United States v. Rodriguez*, 69 F.3d 136, 143 (7th Cir. 1995) (affirming denial of safety valve where defendant had "produced no information concerning the offense, including the identities of drug suppliers or buyers").[4] As applied to Mr.

---

[3] (...continued)
drug offense); *United States v. Edwards*, 65 F.3d 430 (5th Cir. 1995) (finding no error in denial of safety valve where defendant had not provided the name of his supplier and had asserted that he possessed a lesser drug quantity than asserted by the Government and credited by the court even though the difference in quantity was not relevant to culpability or level of penalty).

[4] Other courts similarly have read the safety valve disclosure requirement broadly. *See United States v. Adu*, 82 F.3d 119, 124 (6th Cir. 1996) (finding that "a defendant must truthfully provide all information he has concerning the offense of conviction *and all relevant* conduct" (citing *United States v. Long*, 77 F.3d 1060 (8th Cir. 1996))); *Acostas-Olivas*, 71 F.3d at 377 (accepting the argument that defendant must "tell the government all he knows about the offense of conviction and the relevant conduct, including the identities and participation of others"); *United States v. Buffington*, 879 F. Supp. 1220, 1223 (N.D. Ga. 1995) (finding that defendant must
(continued...)

Montes then, the safety valve provision required at a minimum that he be truthful about the details of his own involvement in the cocaine transaction and about any other activities related to the course of conduct or plan.

### C. The Truthfulness of Mr. Montes' Safety Valve Statement

With our determination that § 5C1.2 covers Mr. Montes' statements challenged by the Government, we turn to the district court's factual finding that Mr. Montes did not *truthfully* provide all the relevant information and evidence he had to the Government. Mr. Montes suggests that the district court refused to apply the safety valve provision simply because he had disagreed with the Government. However, the record demonstrates that the district court conducted its own fact finding regarding the events leading to Mr. Montes' arrest, including the officers' direct and cross-examination testimony at an earlier suppression hearing and the parties' safety valve arguments at the sentencing hearing. *See* Sent. Tr. at 5-7 (determining that Mr. Montes' statement went against "common sense," the testimony of officers credited by the court and the court's finding that it was the officers' arrival that caused the bag to be tossed onto the garage floor).

The district court was entitled to credit the officers' testimony that Barrera handed the bag to Mr. Montes. *See United States v. Thornton*, 197 F.3d 241, 247 (7th Cir. 1999) ("In a swearing contest, the trial judge's choice of whom to believe will not be rejected unless the judge credited exceedingly im-

---

[4] (...continued)
disclose information "relevant to his own course of conduct and his immediate chain of distribution").

probable testimony.")[5] Moreover, Mr. Montes' lack of candor was an appropriate fact for the court to consider in determining eligibility under the safety valve provision. *See Ponce*, 358 F.3d at 468-69. And, finally, Mr. Montes' bare assertion that he was truthful and that the Government was not, *see* Appellant's Reply Br. at 5, does not satisfy his burden to prove by a preponderance of the evidence that he provided a full and honest disclosure. *See Ramirez*, 94 F.3d at 1101 (concluding that "the language and purpose of the safety valve provision require that the defendant, not the government," prove his entitlement to the safety valve, "which includes proof of complete and honest disclosure"); *United States v. Ajugwo*, 82 F.3d 925, 929 (9th Cir. 1996) (finding insufficient the defendant's bare assertion that she had provided all relevant information). In sum, the district court did not clearly err in finding that Mr. Montes had not provided completely truthful information and, thus, did not qualify for relief from the statutory minimum sentence under § 3553(f) and U.S.S.G. § 5C1.2.

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

A true Copy:

---

[5] *See also United States v. Alvarado*, 326 F.3d 857, 862 (7th Cir. 2003) (noting that "it is well established that the district court's choice of whom to believe is almost never vulnerable to a finding of clear error"); *United States v. Rodriguez*, 69 F.3d 136, 144 (7th Cir. 1995) ("The court's determination [of safety valve eligibility] is a fact-specific one and will often depend on credibility determinations that cannot be replicated with the same accuracy on appeal.").

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*