**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 4, 2010
Decided August 16, 2010

**Before**

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 09-2061

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| v. | No. 05 CR 701-1 |
| JESUS ARREDONDO, JR., *Defendant-Appellant.* | John F. Grady, *Judge.* |

**O R D E R**

Jesus Arredondo, Jr. pleaded guilty to conspiring to distribute cocaine, 21 U.S.C. § 846, and was sentenced to 152 months' imprisonment. In this direct appeal, he challenges only his sentence, arguing that the district court should have applied the safety valve under 18 U.S.C. § 3553(f). *See also* U.S.S.G. § 5C1.2(a). We affirm the judgment.

Arredondo was a mid-level distributor in his uncle's drug distribution network. In 2005 he was caught and charged with multiple narcotics trafficking offenses. He entered a blind plea to one count of conspiring to distribute cocaine, admitting that he distributed cocaine and brokered cocaine transactions on behalf of his uncle's organization. But he

disagreed with the government's assessment of the amount of cocaine involved with his offense.

At sentencing he challenged the probation officer's recommendation in the presentence investigation report that he be held accountable for 50 kilograms of cocaine that had been seized from his uncle's house. The district court relied on the proffer of Arredondo's co-conspirator, Oracio Urbina, to conclude that the drugs seized from the house were part of the conspiracy. The court found credible Urbina's statement that Arredondo told him that his (Arredondo's) uncle had been arrested at his house "with 50 kilograms of cocaine belonging to the organization" and that he and his uncle still owed money for the drugs.

The court then declined to apply the safety valve. Based on Arredondo's contention that he was not responsible for the drugs at his uncle's house, the court found that Arredondo had not truthfully provided all information concerning the offense, the fifth requirement for the safety valve, 18 U.S.C. § 3553(f)(5), U.S.S.G. § 5C1.2(a)(5).

On appeal, Arredondo's sole argument is that the district court erred when it found him ineligible for the safety valve. We review interpretations of the guidelines de novo, but factual findings for clear error. *United States v. Corson*, 579 F.3d 804, 813 (7th Cir. 2009); *United States v. Ramirez*, 94 F.3d 1095, 1099-00 (7th Cir. 1996). The safety valve requires that a defendant meet five criteria. At issue in this case is the last requirement that, "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5).

The district court did not clearly err in finding that Arredondo had not been truthful about his involvement with the cocaine seized from his uncle's house. The court believed Urbina's statements that Arredondo told him that the drugs belonged to the conspiracy. It was entitled to do so. *United States v. Montes*, 381 F.3d 631, 637 (7th Cir. 2004); *United States v. Alvarado*, 326 F.3d 857, 862 (7th Cir. 2003). And, in light of that determination, Arredondo's assertion that he was not responsible for those drugs was a lie. The district court's conclusion that Arredondo "continued to cling to a false version of events and dispute [his] own culpability, up to and including the sentencing hearing, is a sufficient basis for refusing to invoke the safety valve provision." *United States v. Thompson*, 106 F.3d 794, 801 (7th Cir. 1997).

Arredondo argues that he gave information to the government on two or three occasions which indicates that he provided the requisite information to meet the fifth prong

of the safety valve. He contends that there is no evidence that he was not truthful on these occasions. But that misses the point. Whatever he said on those other occasions may have been part of the truth, but as far as the district court was concerned, he was not *completely* truthful because he did not disclose his connection with the 50 kilograms of cocaine seized from his uncle's house. The "safety valve provision demands 'all information' that the defendant has concerning the offense." *Montes*, 381 F.3d at 636; *see also Ramirez*, 94 F.3d at 1100. According to the district court, Arredondo did not provide "all information," and we see no reason to disturb that conclusion.

Arredondo also contends that the district court denied him the safety valve simply because he challenged the drug quantity. But the record belies this assertion. The court denied the safety valve because Arredondo had "not come clean" about the 50 kilograms found at his uncle's house. The court was concerned with Arredondo's untruthfulness. That untruthfulness may have manifested itself in his challenge to the drug quantity, but it was the denial of responsibility (in the face of the evidence) that mattered to the court, not the challenge itself. Indeed, there is no indication that if the court found that Arredondo had been honest and was not responsible for the drugs at his uncle's house it would have still denied the safety valve because he made the challenge.

AFFIRMED.