In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 18-2149

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MAURICE COLLINS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:14-cr-20032-CSB-DGB-1 — **Colin S. Bruce**, *Judge.*

_____

ARGUED DECEMBER 11, 2018 — DECIDED MAY 14, 2019

_____

Before WOOD, *Chief Judge*, and RIPPLE and BARRETT, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Maurice Collins pleaded guilty to distributing cocaine and crack cocaine in violation of 21 U.S.C. § 841(a)(1). Because of a prior felony drug conviction, he faced a statutory minimum of ten years in prison, unless he qualified for the "safety valve" in 18 U.S.C. § 3553(f)(5). The district court initially denied Mr. Collins the benefit of the safety valve on a ground that we later determined to be

erroneous. Consequently, we vacated his sentence and re-manded for further proceedings. *See United States v. Collins*, 877 F.3d 362, 368–69 (7th Cir. 2017).

On remand, the district court again determined that Mr. Collins did not qualify for the safety valve. The court focused on a statement in his proffer interview about what he intended to do with the significant amount of cash found in his car at the time of his arrest. Doubting the veracity of his claims about the cash, the court concluded that Mr. Collins had not established that he had "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). Accordingly, the court did not give him the benefit of the safety valve and resentenced him to the statutory mandatory minimum.

Mr. Collins again appeals his sentence. He contends that the district court erred in assessing the relative burdens of proof with respect to his eligibility for the safety valve. He also submits that he provided a truthful and complete disclosure to the Government before sentencing. For the reasons stated below, we affirm the judgment.

## I

## BACKGROUND

In the fall of 2013, a cooperating individual working for the Drug Enforcement Administration ("DEA") informed agents that Mr. Collins was involved in cocaine distribution in the Danville and Champaign, Illinois area. The informant related that Mr. Collins had sold him ounce-quantities of cocaine on multiple occasions. He also said that Mr. Collins

and another individual had pooled their cash and that they had paid $32,000 for a kilogram of cocaine. Following that initial interview, the same informant participated, over a five-month period in 2013 and 2014, in four controlled buys of ounce-quantities of cocaine from Mr. Collins. On another occasion, agents attempted to arrange a buy of three-quarters of a kilogram of cocaine, but Mr. Collins was unable to acquire that amount.

In May 2014, agents arrested Mr. Collins outside Champaign, Illinois, while he was driving eastbound toward Danville and away from Clinton. At the time of his arrest, DEA agents seized from his vehicle about $40,000 in cash. Following the arrest, agents learned through a different source working for a separate local law enforcement task force that Mr. Collins had planned to use the cash to buy a kilogram of cocaine in Danville.

The Government charged Mr. Collins with distributing cocaine and crack cocaine in violation of 21 U.S.C. § 841(a)(1). He subsequently pleaded guilty. Because of a prior felony drug conviction, he faced a statutory minimum of ten years in prison. *See id.* § 841(b)(1)(B). A few weeks before sentencing, Mr. Collins met with the Government for a proffer interview; he hoped that he would earn entitlement to sentencing under the "safety-valve" exception to the statutory minimum. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a)(5). This exception requires a defendant to "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5).

During the proffer interview, Special Agent Joe Green asked Mr. Collins what he intended to do with the $40,000 found in his vehicle at the time of his arrest, at least $15,000 of which, Mr. Collins admitted, were proceeds from cocaine sales. Mr. Collins explained that he had planned to buy a nice car at the Clinton Auto Auction and denied any intent to purchase a kilogram of cocaine. Mr. Collins told the agent: "I was going to Danville first … to the gym. Then I was going to the auction during the evening."[1]

At the original sentencing in May 2015, the district court determined that Mr. Collins had played a supervisory role in the offense, *see* U.S.S.G. § 3B1.1(c), which rendered him ineligible for the safety-valve reduction, *see* 18 U.S.C. § 3553(f)(4); U.S.S.G. § 5C1.2(a)(4). The court therefore imposed the statutory minimum sentence of 120 months' imprisonment but indicated that it would have chosen a lower sentence had Mr. Collins been eligible for the safety valve. Mr. Collins appealed. We held that the district court had erred in applying the supervisory-role enhancement. We therefore remanded for resentencing. *See Collins*, 877 F.3d at 368–69.

At the resentencing hearing in May 2018, the Government maintained that Mr. Collins still was ineligible for the safety valve because he had not been fully truthful in his interview. In particular, the Government asserted that he had made three false statements. The first two statements concerned his working relationship with another drug trafficker and the nature of his involvement in a particular transaction

---

[1] *See* R.31 (12:05–12:25 in the proffer video).

involving crack cocaine instead of powder cocaine. The district court disagreed with the Government and concluded that Mr. Collins had not been untruthful with respect to these matters.

The third falsehood, according to the Government, concerned Mr. Collins's statements about what he planned to do with the $40,000 in cash he was carrying when arrested. On this issue, the district court took evidence and heard argument. Testifying for the Government, Special Agent Green pointed out that Mr. Collins was arrested on a Tuesday, but Clinton Auto Auction held auctions on Wednesdays and Saturdays only. He also testified that $40,000 would have been a "reasonable price" for a kilogram of cocaine at the time of Mr. Collins's arrest, and "every once in a while," drug traffickers found with large amounts of cash say that they are "on their way to purchase a vehicle."[2] On cross-examination, Special Agent Green agreed that, during the investigation, the largest amount of cocaine that Mr. Collins had sold at any one time was an ounce and one-half. Indeed, when Special Agent Green's confidential informant had attempted to purchase three-quarters of a kilogram from Mr. Collins, Mr. Collins could not acquire that amount. Special Agent Green also admitted that the inventory at the Clinton Auto Auction might include some "decent" cars by high-end makers.[3] After the agent testified, the court recessed the hearing so that it could watch the videotape of

---

[2] R.59 at 29, 31.

[3] *Id.* at 35–36.

Mr. Collins's safety-valve interview. Mr. Collins did not testify.

When the hearing reconvened, the district court stated that it had reviewed the disputed section of the video "multiple times" and had "watched and heard the tones" in an effort to understand Mr. Collins's "true intentions."[4] The court then set forth six undisputed facts that informed its ruling: (1) Mr. Collins was "dealing in, more or less, ounce quantities of cocaine"; (2) "$40,000 was an approximate price for a kilogram of powder cocaine"; (3) drug dealers typically "buy large quantities of cocaine with cash"; (4) a confidential source "indicated [that Mr. Collins] intended to purchase a kilo of cocaine … during the operative time frame"; (5) "there was no Clinton Auto Auction the day [Mr. Collins] was arrested"; and (6) "he was driving away from Clinton— not towards it—with the money."[5] The court was "skeptical that [Mr. Collins] was being 100 percent truthful as to his intention with the $40,000" because his explanation did not "seem to be reasonable."[6]

The district court acknowledged that, "[i]n a lot of ways, this is just … a 'he said/she said' sort of thing," but stressed that Mr. Collins had the burden of proving that his explanation was truthful.[7] Although the court was "troubled," it concluded that Mr. Collins had not satisfied his burden, and

---

[4] R.60 at 3–4, 7–8.

[5] *Id.* at 6–7.

[6] *Id.* at 8, 9.

[7] *Id.* at 7–8.

thus, he did not qualify for safety-valve relief.[8] After sentencing Mr. Collins to 120 months in prison, the court "actively encourag[ed]" him to appeal because the court "want[ed] to make sure [it had] interpreted the law correctly as to the burden of proof."[9]

If Mr. Collins had been eligible for the safety valve, his guideline range would have been 37 to 46 months.

## II

## DISCUSSION

As part of the Mandatory Minimum Sentencing Reform Act of 1994 ("MMSRA"), Congress created the so-called "safety-valve" provision, 18 U.S.C. § 3553(f), which abrogates mandated minimum sentences for some first-time, low-level offenders in federal drug cases. Before the MMSRA's enactment, a district court could impose a sentence below the statutory minimum only upon the Government's motion, based on the defendant's substantial assistance to authorities. *See id.* § 3553(e); U.S.S.G. § 5K1.1. Because these motions primarily benefited offenders with greater criminal involvement — and thus, more information — lower-level offenders often received longer sentences than their more culpable counterparts. *See United States v. Arrington*, 73 F.3d 144, 147 (7th Cir. 1996). To remedy this inequity, Congress enacted the safety-valve provision. *See* H.R. Rep. No. 103-460, at 4–5 (1994).

---

[8] *Id.* at 8, 10.

[9] *Id.* at 19.

The safety-valve provision *requires* a district court to waive the imposition of a statutory minimum sentence if it finds that the defendant meets the following five criteria:

(1)    the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines …;

(2)    the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3)    the offense did not result in death or serious bodily injury to any person;

(4)    the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5)    not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(a); *see also* 18 U.S.C. § 3553(f). This appeal focuses on the fifth criterion. We review the district court's interpretation of the safety-valve provision under the statute and the sentencing guidelines de novo. *United States v. Montes*, 381 F.3d 631, 634 (7th Cir. 2004) (citing *United States v. Ramirez*, 94 F.3d 1095, 1099 (7th Cir. 1996)). We review the district court's factual findings about a defendant's eligibility for the safety valve, as well as its ultimate conclusion, for clear error. *Montes*, 381 F.3d at 634; *United States v. Acevedo-Fitz*, 739 F.3d 967, 970 (7th Cir. 2014).

**A.**

At this late date, there can be no question that the defendant must carry the burden of establishing eligibility for the safety-valve exemption from a mandatory minimum sentence. Twenty-three years ago, in *United States v. Ramirez*, 94 F.3d 1095 (7th Cir. 1996), we reviewed the denial of safety-valve relief to a defendant who had provided only the "basic details" of his offense but had not responded to specific questions posed by the Government. *Id.* at 1103. In that case, the defendant had argued that once a defendant offers information to the Government and states that he has fully provided all that he knows, "the burden must shift to the government to proffer evidence that the defendant has not provided his information completely or truthfully." *Id.* at 1100. We rejected the defendant's "shifting-burden theory" and affirmed the district court's denial of the safety valve. *Id.* We analogized the safety valve to a departure under the sentencing guidelines and reasoned that because the party seeking the departure bears the burden of proving that he meets the criteria, it "logically follows … that a defendant moving for a § 5.C1.2 reduction would be responsible to prove his

entitlement to it." *Id.* at 1101. We therefore held that application of the safety valve requires that "the defendant, not the government, prove the defendant's entitlement to that sentence reduction," and emphasized that, throughout the proceedings, "the *burden remains on the defendant* to prove his entitlement." *Id.* at 1101, 1102 (emphasis in original) (quoting *United States v. Montanez*, 82 F.3d 520, 523 (1st Cir. 1996)). We noted, moreover, that our approach was "compatible with the view taken in other circuits." *Id.* at 1100–01 (citing cases).

*Ramirez* confirmed the existing law of the circuit and, in turn, we have confirmed the holding in *Ramirez* in many cases. *See, e.g.*, *Montes*, 381 F.3d at 637; *United States v. Galbraith*, 200 F.3d 1006, 1016 (7th Cir. 2000); *United States v. Martinez*, 301 F.3d 860, 866 (7th Cir. 2002). If, after evaluating the defendant's submission, the district court finds the statements in the proffer interview to be "inconsistent," "suspicious," or "implausible," the court is entitled to deny safety-valve relief. *United States v. Rebolledo-Delgadillo*, 820 F.3d 870, 880 (7th Cir. 2016). Our more recent cases testify to the durability of this principle. *See, e.g.*, *United States v. Sandoval*, 747 F.3d 464, 469 (7th Cir. 2014). To prevail, a defendant must meet the district court's misgivings even when those misgivings are based on a relatively weak rebuttal by the Government, or when those misgivings are grounded in factual assertions not admissible under the Rules of Evidence.[10]

---

[10] *See United States v. Alvarado-Tizoc*, 656 F.3d 740, 746 (7th Cir. 2011) ("The government's evidence was not strong, but it didn't have to be, as there was nothing on the other side but the defendant's say-so … ."); *United States v. Ponce*, 358 F.3d 466, 468 (7th Cir. 2004) (rejecting the defendant's argument that such non-evidentiary presentations are categor-

(continued … )

Most of the decisions of our sister circuits are consonant with our approach. Certainly, every circuit to have considered the matter has held, as we have, that the initial burden of proof for safety-valve eligibility lies with the defendant.[11] Some also specifically have rejected, as we have, any form of burden shifting. *See, e.g.*, *United States v. Aidoo*, 670 F.3d 600, 607 (4th Cir. 2012) (noting that "[t]he defendant's burden under the safety valve is a true burden of proof that rests, at all times, on the defendant"). These circuits accept that "the government has no obligation to present evidence of the defendant's failure to satisfy the requirements of the safety valve." *Id.* at 606; *see also United States v. Alvarado-Rivera*, 412 F.3d 942, 947 (8th Cir. 2005) (en banc) (rejecting defendants' argument that the Government has the burden to present additional evidence if it finds a defendant's proffer inadequate).

---

( … continued)

ically insufficient "to call into question the veracity of [the defendant's] testimony" because "the government does not bear the burden of proof").

[11] *See United States v. Bolton*, 858 F.3d 905, 913 (4th Cir. 2017); *United States v. Carillo-Ayala*, 713 F.3d 82, 90 (11th Cir. 2013); *United States v. Jimenez*, 451 F.3d 97, 101–03 (2d Cir. 2006); *United States v. Mathis*, 216 F.3d 18, 29 (D.C. Cir. 2000); *United States v. Morones*, 181 F.3d 888, 890 (8th Cir. 1999); *United States v. Vasquez*, 161 F.3d 909, 912 (5th Cir. 1998); *United States v. Sabir*, 117 F.3d 750, 754 (3d Cir. 1997); *United States v. Verners*, 103 F.3d 108, 110 (10th Cir. 1996); *United States v. Miranda-Santiago*, 96 F.3d 517, 529 & n.25 (1st Cir. 1996); *United States v. Ramirez*, 94 F.3d 1095, 1101 (7th Cir. 1996); *United States v. Ajugwo*, 82 F.3d 925, 929 (9th Cir. 1996); *United States v. Adu*, 82 F.3d 119, 123 (6th Cir. 1996).

Other circuits seemingly have indicated that the burden shifts to the Government after the defendant's initial evidentiary showing. The First Circuit initially took this view in *United States v. Miranda-Santiago*, 96 F.3d 517 (1st Cir. 1996), where it rejected as inadequate the Government's statement that it did not "believe" the defendant in her proffer. *Id.* at 529. That court required that the Government must at least come forward with "some sound reason to suggest" that the defendant could not be credited. *Id.* n.25. This language in *Miranda-Santiago* suggesting that the Government had a formal obligation to meet the defendant's case caused the First Circuit to delineate the true import of its holding in subsequent cases. In *United States v. Marquez*, 280 F.3d 19 (1st Cir. 2002), the court explicitly described several scenarios that belied a sweeping interpretation of the problematic language in the earlier case. First, the court reiterated its earlier holding in *United States v. White*, 119 F.3d 70 (1st Cir. 1997), that a "court may reject a safety valve proffer based on its reasoned assessment of the defendant's credibility in light of the facts—and that the court may do so without the benefit of independent rebuttal evidence." *Marquez*, 280 F.3d at 24. "*Miranda–Santiago* stands," the First Circuit continued, "merely for the proposition that when the record, taken as a whole, will not support a finding that the defendant has failed to provide a truthful and complete proffer, the government's lack of confidence in the proffer is insufficient, in and of itself, to justify a denial of access to the safety valve." *Id.; see also United States v. Padilla-Colón*, 578 F.3d 23, 31 (1st Cir. 2009) (reaffirming the *Marquez* court's understanding of *Miranda-Santiago*); *United States v. Bravo*, 489 F.3d 1, 12 (1st Cir. 2007) ("The district court's finding on eligibility must be 'an independent determination,' resting on more than 'bare

conclusions.'" (citation omitted) (quoting *White*, 119 F.3d at 73, and *Miranda-Santiago*, 96 F.3d at 528)). Notably, both *Padilla-Colón* and *Bravo* also stress that, in the end, it is the district court's "reasoned determination, in light of the facts on record" that must determine the propriety of granting the safety-valve reduction. *Padilla-Colón*, 578 F.3d at 31; *see also Bravo*, 498 F.3d at 12.

In *United States v. Miller*, 179 F.3d 961 (5th Cir. 1999), the Fifth Circuit found support in *Miranda-Santiago* and its progeny for the unexceptional proposition that, in evaluating a defendant's safety-valve proffer, a district court cannot determine that the defendant has not rendered a truthful and complete statement based solely on speculation, devoid of any factual support, suggested by the Government. The court concluded that the district court had erred in failing to apply the safety valve based only on the Government's unsupported assertion that the defendant had "surely lied" when he told authorities that he had only recently learned how to dry cocaine. *Id.* at 967. The Government had argued that because the defendant previously had trafficked cocaine, the court could "glean[]" from the record that he also was familiar with the process of drying cocaine. *Id.* at 968. After discussing *Miranda-Santiago*, the Fifth Circuit rejected the Government's assertion as "merely speculative," and thus, an insufficient basis on which to deny safety-valve relief. *Id.* at 968–69.

Similarly, the Ninth Circuit has concluded that once a defendant meets his "initial burden" of demonstrating his eligibility for the safety-valve reduction, "it falls to the Government to show that the information he has supplied is untrue or incomplete." *United States v. Shrestha*, 86 F.3d 935, 940

(9th Cir. 1996); *see also United States v. Diaz-Cardenas*, 351 F.3d 404, 409 (9th Cir. 2003).[12] Read in context, however, these cases stand for the proposition that, once a defendant makes a significant case, it is incumbent upon the Government to rebut that case if it does not want the defendant to prevail. This so-called "shifting" of the burden to the Government simply means that, if the Government is to prevail in the face of a fact-based submission by the defendant, it must produce a fact-based rebuttal, not rank speculation.[13]

There is no doctrinal disagreement among the circuits. A close examination of these cases makes very clear that the authorities are compatible. No court of appeals questions the fundamental proposition that the defendant bears the ultimate burden of proof in establishing eligibility for the safety-valve reduction. No circuit disputes that a defendant can fail to carry the burden by producing a story so riddled with

---

[12] The District of Columbia Circuit has articulated, albeit in *dicta,* a similar understanding of *Miranda-Santiago* and *United States v. Shrestha*, 86 F.3d 935, 940 (9th Cir. 1996), respectively. *See United States v. Tate*, 630 F.3d 194, 203 (D.C. Cir. 2011) (citing *Miranda-Santiago* favorably and quoting it at length; *see also United States v. Gales*, 603 F.3d 49, 54–55 (D.C. Cir. 2010) (holding that neither *Miranda-Santiago* nor *Shrestha* support altering the burden of proof for the defendant).

[13] As one commentator has remarked, shifting the burden to the Government in this regard can help "ensur[e] that any challenges to [a defendant's safety-valve] eligibility stem from actual untruthfulness on their part, rather than simple government speculation or the government's dissatisfaction with the information it received." Natasha Bronn, *"Unlucky Enough to Be Innocent": Burden-Shifting and the Fate of the Modern Drug Mule Under the 18 U.S.C. § 3553(f) Statutory Safety Valve*, 46 Colum. J.L. & Soc. Probs. 469, 500 (2013).

inconsistencies and implausibility that the district court cannot accept it. *See, e.g.*, *Montes*, 381 F.3d at 637. In such cases, the Government's silence is immaterial. Some circuits simply have taken the time to emphasize that when the defendant makes an initial submission that appears credible and complete, the Government cannot carry the day by simply telling the district court that *it* does not believe the defendant or by inviting the district court to indulge in speculation. The Government can hope to rebut the defendant's credible showing only by giving the district court a concrete, fact-based rationale for rejecting the defendant's case. It can do this by impeaching, to the district court's satisfaction, the quality of the defendant's submission or by introducing evidence to the contrary. It cannot prevail, however, simply by asserting *its* disbelief or *its* lack of satisfaction. In the end, it is the district court's estimation of the defendant's submission, not the Government's, that counts.

### B.

Confident that our approach to the burden of proof resides comfortably among the articulations of our sister circuits and that there is no substantive disagreement among the circuits, we proceed to consider its application in the present case.

The Government does not dispute that Mr. Collins provided abundant truthful information about his offense, including his drug source and other potential distributors.[14]

---

[14] Appellant's Br. 16–17; Appellee's Br. 14. This court has had little difficulty affirming the denial of safety-valve relief when the opposite is true—*i.e.*, when a defendant provided only limited information to the Government or lied about or even denied his involvement in the offense.

(continued … )

Rather, it argued that Mr. Collins's ineligibility for the safety valve turned solely on whether he was truthful with respect to his intentions for the $40,000 in cash he possessed when he was arrested. In the Government's view, the evidence suggested that he lied when he told the officers that he planned to buy a car, not cocaine.

The district court struggled with the issue, but concluded that Mr. Collins had not carried his burden. The court cited six facts that it considered in reaching its conclusion that Mr. Collins's explanation did not "seem to be reasonable."[15] The court noted that Mr. Collins generally dealt in ounce-quantities of cocaine throughout the term of the investigation, but that he had an amount of cash approximately equal to the cost of one kilogram and that drug dealers use cash. It also discounted his explanation that he would be buying a car, because he was heading in the wrong direction and there was no auction scheduled to be held in Clinton on the day of his arrest.

Applying the approach employed throughout the United States, we must conclude that Mr. Collins's sentence must be affirmed. The district court understood that the defendant

---

( … continued)

*Cf. United States v. Ortiz*, 775 F.3d 964, 967–68 (7th Cir. 2015) (defendant gave limited information in a post-arrest statement, leaving "many facts [about his offense] unknown"); *United States v. Marin*, 144 F.3d 1085, 1095 (7th Cir. 1998) (defendant "kept altering his version of events"); *United States v. Thompson*, 106 F.3d 794, 801 (7th Cir. 1997) (defendants "continued to cling to a false version of events and dispute their own culpability").

[15] R.60 at 9.

had the burden of establishing eligibility for the safety valve. It weighed the record and statements before it and concluded that Mr. Collins had not established his eligibility because his explanations were not credible. This conclusion was not clearly erroneous. It was a difficult decision on disputed facts. The district court made the hard call and decided the case according to established law.

## Conclusion

The judgment of the district court is affirmed.

AFFIRMED