**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 13, 2019
Decided December 16, 2019

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-2798

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:17-cr-00291-1 |
| ARISTEO GALLARDO-RAMIREZ, *Defendant-Appellant*. | Manish S. Shah, *Judge*. |

**O R D E R**

Aristeo Gallardo-Ramirez contests the district court's imposition of a 120-month sentence after he pleaded guilty to one count of conspiracy to sell heroin. He contends that the district court wrongly denied him safety-valve relief under 18 U.S.C. § 3553(f), which would have permitted a shorter sentence, because the government ended the safety-valve proffer early, preventing him from relaying everything he knew about the drug-distribution conspiracy and related criminal conduct. We see the facts differently, however, and conclude that the district court did not clearly err by finding that Gallardo-Ramirez was not entirely forthcoming as required by § 3553(f), and regardless, any such error would be harmless. We therefore affirm.

**I**

In March 2016 Gallardo-Ramirez received two kilograms of heroin from his supplier, but he returned it because it was of poor quality. He then arranged to meet his supplier to pick up better product. He and his brother drove to the pickup location, and Gallardo-Ramirez left the car. His brother then picked up the supplier who had a backpack containing several individually wrapped packages. After a while, the supplier got out of the car but left the backpack in the center console. Officers then approached the car, searched it, and discovered that the backpack contained packages weighing 10.599 kilograms in total and containing 1.8 kilograms of heroin. Gallardo-Ramirez ultimately pleaded guilty to one count of conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1)(A) and 846.

At his change-of-plea hearing, Gallardo-Ramirez acknowledged that he agreed to distribute at least 1.8 kilograms of heroin. But when asked whether "throughout [his] participation in the agreement" the conspiracy involved 6.8 kilograms of heroin, Gallardo-Ramirez answered: "With regards to what was mine, it was 1.8. With the others, I never knew anything about it or ever touched it." He soon contradicted himself, though, by saying that there was more heroin involved "in the group" than what he "personally touched." Gallardo-Ramirez also denied that his brother was involved in the conspiracy. Later, his brother admitted in his own plea agreement that on five separate occasions, he delivered a kilogram of heroin for Gallardo-Ramirez.

In connection with the Probation Office's preparation of the Presentence Investigation Report, the government provided a version of the offense conduct stating that Gallardo-Ramirez continued to be involved with drug dealing after the police seized the 1.8 kilograms of heroin in March 2016. Specifically, on December 9, 2016, officers saw someone enter and then exit Gallardo-Ramirez's house. That person then stepped into Gallardo-Ramirez's car, drove it down the street, got out of the car with a package containing a kilogram of heroin, and sold it. The PSR also noted that "all parties" had agreed that "the offense involved at least 6.8 kilograms" of heroin. On that basis, the Probation Office calculated a base offense level of 32 under U.S.S.G. § 2D1.1 (for quantities between three and ten kilograms of heroin). The Probation Office did not recommend the two-level increase for obstruction of justice urged by the government.

When combined with Gallardo-Ramirez's criminal history category of I, the resulting advisory guidelines range was 97 to 121 months' imprisonment. Because

Gallardo-Ramirez admitted during his plea that he was responsible for at least one kilogram of heroin, his conviction carried a statutory minimum sentence of 120 months' or 10 years' imprisonment. See 21 U.S.C. § 841(b)(1)(A)(i).

As a first-time offender, Gallardo-Ramirez was eligible to pursue safety-valve relief under 18 U.S.C. § 3553(f). That statute would have allowed the district court to impose a sentence below the statutory minimum if Gallardo-Ramirez met certain criteria. At issue in this appeal is whether Gallardo-Ramirez satisfied § 3553(f)(5), which requires that he provide the government with "all the information or evidence" he had about "the offense or offenses that were part of the same course of conduct or of a common scheme or plan."

Gallardo-Ramirez met with the government to provide information to satisfy the safety-valve requirement. The record contains no transcript or notes of the proffer session. All we know about what transpired comes from the parties' statements during the sentencing hearing, which took place a few days later. The government told the district court that, in its view, Gallardo-Ramirez was not entirely truthful and forthcoming regarding the full scope of his offense conduct and knowledge of others' conduct. Gallardo-Ramirez's attorney admitted that his client "may have had more information," but asserted that he was unable to share it because he "kept being interrupted." His attorney also underscored that Gallardo-Ramirez did provide some information, including the name of two associates and the fact that he "made transfers in Kentucky."

At the district court's request, the government elaborated on why it thought that Gallardo-Ramirez had been less than forthcoming in the proffer. First, it noted that Gallardo-Ramirez said he thought there was only one kilogram of heroin in the backpack the police seized in March 2016. But the government had phone records showing that Gallardo-Ramirez knew that the backpack contained eleven one-kilogram packages. Second, the government stated that Gallardo-Ramirez's denial of any drug dealing after March 2016 was inconsistent with its observations that someone was dealing drugs out of his home just nine months later, in December. Third, the government said that it knew Gallardo-Ramirez had taken multiple trips to Milwaukee to deal drugs, but he denied doing so in the safety-valve proffer. After some prodding, the government added, Gallardo-Ramirez did admit that he knew Jose Reyes (one of the conspiracy's Milwaukee customers) but said he did not remember ever delivering drugs to him.

The district court invited Gallardo-Ramirez to respond to the government's account of what transpired at the proffer. In particular, the court sought an explanation about the government's contention that Gallardo-Ramirez lied about continuing to deal drugs, since the December 2016 incident was described in the PSR and Gallardo-Ramirez had not objected to it earlier in the hearing. His attorney said that these alleged omissions were nothing more than honest mistakes. He said that Gallardo-Ramirez admitted at the proffer meeting that he had sold drugs to Reyes and merely forgot the dates on which he did so. He also said that Gallardo-Ramirez knew that there were more drugs in the backpack, just not "the exact amount." As for the government's contention that Gallardo-Ramirez was still dealing drugs in December 2016, the attorney responded that "I don't think we ever got to that in the discussion," and then that he did not "have any comment on it."

The district court then asked which party terminated the proffer. The prosecutor said that the government ended the proffer after 90 minutes, because it did not seem to be progressing well. The government explained that Gallardo-Ramirez identified only one supplier and otherwise was not forthcoming about other customers.

Based on this exchange, the district court concluded that Gallardo-Ramirez was not completely forthcoming as required by § 3553(f), and therefore was not eligible for safety-valve relief. As the district court saw things, "while Mr. Gallardo-Ramirez did provide some information … when pressed for additional information, that additional information was not forthcoming." Specifically, Gallardo-Ramirez had provided an "insufficient lack of detail" about "the other potential participants' source of supply and downstream customers." The district court also found that Gallardo-Ramirez had not been honest, especially with respect to "the notion that he denied continuing [to sell drugs] after March 2016," which was "just not true," according to the PSR.

The district court then concluded that Gallardo-Ramirez had committed obstruction of justice during his change-of-plea hearing by lying about the extent to which his brother and others were involved in the conspiracy. The court then calculated an advisory guidelines range of 151 to 188 months' imprisonment, and ultimately imposed the 120-month statutory minimum. The district court explained that a sentence of that length was appropriate "based on the conduct here, the drug quantity, the relationship to his brother, and the lack of complete honesty at the change of plea hearing." The judge then emphasized that, for those reasons, he would have imposed

this same sentence even if Gallardo-Ramirez met the requirements for safety-valve relief.

## II

On appeal Gallardo-Ramirez argues that the district court should have granted him safety-valve relief. He contends that the court erred by finding that he had not stopped selling drugs after March 2016. He further asserts that he did not have an opportunity to discuss the December 9, 2016 drug transaction because the government prematurely ended the proffer. Finally, Gallardo-Ramirez argues that the court improperly credited the government's assertion that he withheld information about other suppliers and customers.

None of these arguments can succeed, however, because Gallardo-Ramirez has not carried his burden to demonstrate that the district court clearly erred—the strict standard under which we must review the district court's factual findings and its ultimate conclusion about safety-valve eligibility. See *United States v. Collins*, 924 F.3d 436, 441 (7th Cir. 2019). The district court was entitled to credit the government's explanation that it ended the proffer early because Gallardo-Ramirez was not forthcoming. We cannot accept Gallardo-Ramirez's invitation to second-guess the district court's findings about the meeting. See *United States v. Alvarado*, 326 F.3d 857, 862 (7th Cir. 2003).

Likewise, nothing in the record supports Gallardo-Ramirez's assertion that the district court improperly penalized him for not providing information about individuals and suppliers outside of the conspiracy. To the contrary, the district court credited the government's statement that there were customers and suppliers "involved" in the conspiracy "that he did not identify." Insofar as Gallardo-Ramirez is suggesting that he was not obligated to provide information about the December 9, 2016 drug deal (because it was a "different course of conduct or scheme"), the government provided evidence that it was related: Gallardo-Ramirez's house *and* car were used in the transaction. See U.S.S.G. § 1B1.3(a)(1)(B). We will not second-guess the district court's decision to credit the government's account over that of Gallardo-Ramirez, nor will we reweigh the evidence that the district court relied on in making its finding. See *Alvarado*, 326 F.3d at 862; *United States v. Lupton*, 620 F.3d 790, 801 (7th Cir. 2010).

In any event, even if the district court's denial of safety-valve relief had been erroneous, such error would have been harmless. Harmless error applies when it is

clear that the district court would have imposed the same sentence despite the error identified on appeal. See *United States v. Salgado*, 917 F.3d 966, 969–70 (7th Cir. 2019). Here, there can be no doubt that the district court would have imposed the same sentence even if it had concluded that Gallardo-Ramirez was entitled to safety-valve relief. The court could not have been clearer on this point:

> The sentence that I am going to impose would be the same whether or not the safety valve applied and whether or not the guidelines for obstruction of justice and acceptance of responsibility applied, because, based on the conduct here, the drug quantity, the relationship to his brother, and the lack of complete honesty at the change of plea hearing, all of that indicates to me that the appropriate sentence is, in fact, a sentence of 120 months on Count One of the third superseding indictment.

The court's statement, combined with the fact that Gallardo-Ramirez's sentence falls well below the bottom of the advisory guidelines range, convinces us that any error with the district court's safety-valve finding was harmless. We therefore decline Gallardo-Ramirez's invitation to remand for resentencing.

For these reasons, we AFFIRM.